HILAND DAIRY, INC., a Missouri corporation, Reiss Dairy, Inc., a Missouri corporation, and Sunny Hill Farms Dairy Co., Inc., a Missouri corporation, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

The KROGER COMPANY, a corporation, Defendant.

No. 67 C 67(3).

United States District Court
E. D. Missouri, E. D.

Aug. 28, 1967.

Lynn C. Paulson, Washington, D. C., Gray L. Dorsey, Chesterfield, Mo., O'Herin & Newberry, Malden, Mo., for plaintiffs.

Norman Diamond and Peter K. Bleakley, Arnold & Porter, Washington, D. C., and John P. Emde, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

REGAN, District Judge.

This action is for injunctive relief from loss or damages allegedly threatened by violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2. Before us is defendant's motion to dismiss the complaint, essentially for failure to state a claim upon which relief can be granted.

Plaintiffs are three dairy processors, who sue on behalf of themselves and all other dairy processors allegedly "similarly situated" and doing business at wholesale and retail in what is referred to in the complaint as the St. Louis, Missouri, Trade Territory, a geographical area within 250 miles from St. Louis. Included in the alleged class are such well-known names as National Dairy Products (Sealtest Products), Foremost Dairies, Inc., Borden Company, Beatrice Foods, Inc., and Sanitary Milk Producers.

Defendant (Kroger), the second largest food retailer in the country, is the operator of a chain of retail grocery stores, of which more than 200 are in the St. Louis, Missouri, Trade Territory. From these stores Kroger sells approximately 8 per cent of the processed fluid milk and other dairy products which are sold

at retail in that territory. Presumably, the dairy products sold by Kroger are purchased from one or more of the 67 other dairy processors claimed to be represented by plaintiffs.

The complaint alleges that Kroger has begun the construction of a dairy processing plant with sufficient capacity to supply more than 20 per cent of the total current consumer demand for dairy products in the St. Louis, Missouri, Trade Territory, "with the specific intent of supplying the full needs of all defendant's retail stores in the territory * * * [and] to sell dairy products within the relevant trade territory." Plaintiffs seek to enjoin the completion and operation of the processing plant upon the theory that if Kroger is permitted to complete and operate the plant, it will have monopoly power over dairy products in this trade territory and therefore is guilty of attempting to monopolize trade and commerce contrary to Section 2 of the Sherman Antitrust Act.

We start with the well established rule that for the purpose of the motion to dismiss, defendant admits the facts well pleaded in the complaint. What is alleged is that Kroger, with 200 retail stores, is presently constructing a facility by means of which it hopes to supply 20 per cent of the total demand for dairy products in this area including that satisfied in its own stores. Through its own retail outlets, Kroger is allegedly "assured" of selling 8 per cent of the market and thereby of using 40 per cent of the plant's maximum production capacity. However, it will be compelled to compete with other processors, including the giants of the industry, for another 12 per cent of the market. The remaining 80 per cent of the market will not be affected, except indirectly.

If we assume (as do plaintiffs) the inapplicability of the regulatory pricing legislation in some or all of the six states (Missouri, Iowa, Illinois, Kentucky, Tennessee, and Arkansas) in which the St. Louis, Missouri, Trade Territory, is located, and that no provision of the Clayton Act and the Federal Trade Commission Act will be a legal deterrent, Kroger will be free to and intends (so plaintiffs allege) to reduce below cost the price at which the milk products sold in its own stores will be offered to its customers, and thereby divert trade, not so much from the other dairy processors, as from the other food retailers with which Kroger competes.

In effect, the complaint charges that Kroger intends to use its power as the second largest food retailer to produce and sell dairy products in its own stores as "leaders" or "loss leaders" (without being hampered in so doing as it has been in the past), for the primary purpose of diverting trade from other food retailers to the Kroger stores, and thereby increasing defendant's over-all sales and profits. This, so plaintiffs contend, will result in monopoly power, as evidenced by two criteria, one, the partial control Kroger will have over prices by depressing or lowering them at will, and the other, the allegedly unfair advantage Kroger's "captive" market of 8 per cent will give it over other wholesalers of dairy products.

The complaint describes Kroger as maintaining "a highly integrated operation which includes the manufacturing, processing, distributing and retailing of a broad line of merchandise, and including fluid milk and other dairy and food products and a variety of non-edible household products." It is further alleged that Kroger owns or leases and operates bread and cracker bakeries, dairies, a coffee roasting plant, and a general manufacturing plant for producing and bagging candies, salad dressings, preserves, peanut butter, spices, coffee, extracts and other grocery items, as well as operating egg exchanges, a peanut plant in Georgia, and an evaporated milk plant in Indiana.

These allegations of themselves raise questions both as to whether the theory upon which plaintiffs are presently proceeding would be equally applicable to Kroger's existing integrated operation of its bakeries and dairies and its manufac-

ture of a number of staple grocery items which are sold in its stores. So, too, we note the entire absence of any allegation that defendant has heretofore used its existing food processing and manufacturing facilities in an attempt to monopolize the market for such products, or even that portion of the market represented by its own retail sales. Certainly, Kroger could use as "loss leaders" any of the other products it processes or manufactures, with the same intended result.

There is no charge that Kroger has monopoly power in the retail grocery field, and for such reason this is not a case of a company, having an existing monopoly, which then integrates vertically thereby creating a danger of an extension of its *existing* monopoly into the new market which it has entered. Conceivably, Kroger may intend to achieve monopoly power in the retail grocery field by diverting trade from its competitors as a result of the sale of dairy products at a loss. If so, it would appear that Kroger's actual intent would be to monopolize the retail food business (a matter with which plaintiffs have no concern) rather than to monopolize the unprofitable dairy processing portion of its business.

The basic question posed by the motion to dismiss is whether Section 2 of the Sherman Antitrust Act prohibits a large food retailer from continued internal expansion by constructing a plant in order to process one of the food products it sells (and for which it has a "captive" market of 8 per cent), the plant having a capacity, in excess of the retailer's present needs, of an additional 12 per cent of the total market.

Plaintiffs place major emphasis upon Kroger's control of the "captive market"

of 8 per cent (Kroger's own retail stores) which, they contend, gives Kroger an unfair competitive advantage in selling dairy products. Plaintiffs' position, necessarily, is that by means of the plant in which it will process all fluid milk and dairy products to be sold in its stores (that is, supply all its own needs of such products), Kroger will exclude all other processors from selling to it and thereby monopolize that significant (8%) portion of the total market.[1] What plaintiffs are really saying, is that Section 2 of the Sherman Antitrust Act prohibits any large food retailer from manufacturing and processing any kind of merchandise it sells in quantity, at least if it intends to displace other processors which have theretofore supplied its need for such merchandise. We have been cited to no comparable case which has ever so held or which has condemned internal expansion by a food retailer to provide for its own requirements.

Plaintiffs rely on United States v Aluminum Company of America, 2 Cir., 148 F.2d 416. We see no analogy. There, defendant, the giant of the industry, continually anticipated increased demand by doubling and redoubling its capacity, thereby successfully deterring others from entering the market. Here, some 70 dairy processors now have 100 per cent of the market. Kroger, a newcomer in the processing field, but "assured" through its existing outlets of some 8 per cent of the market once its production facility is completed, contemplates entering into competition with those already in the market, and others.

At worst, Kroger will eliminate all competition for the 8 per cent of the market represented by its *own* stores, either by excluding its competitors from the "captive" portion of the market or by

---

1. We seriously question whether the 8% of the market represented by sales of fluid milk and dairy products to Kroger customers is truly a "captive" one. In this day and age, in which ultimate consumers are brand-name conscious, it does not necessarily follow that all Kroger customers who (for example) purchase Sealtest brand milk or ice cream will accept similar Kroger brand products, even at a reduced price. The situation is wholly unlike that of a steel manufacturer attempting to gain control of steel fabricators, in which event the market for the steel to be fabricated would be a "captive" one.

reducing the price at which the milk products in its stores are sold to a level below that which the others can profitably sell to Kroger. These facts, even assuming a wrongful intent, are in our judgment insufficient to entitle plaintiffs to an injunction to prevent Kroger from constructing or completing its contemplated processing plant.

The major fallacy in plaintiffs' argument is that in essence it is premised not so much on what Kroger has done and is actually doing, but on what Kroger allegedly intends to do in the future. True, the present intent to destroy competition or build monopoly is essential to a finding of an "attempt to monopolize" (Times-Picayune Pub. Co. v. United States, 345 U.S. 594, 626, 73 S.Ct. 872, 97 L.Ed. 1277), but the attempt must be evidenced by the actions done with such intent. Here, the sole actions of Kroger, as set forth in the complaint, are (1) the operation in this trade area of 200 retail food stores, and (2) the construction of a dairy processing plant to supply its own needs (with an excess capacity with which it will compete for a portion of the remaining market). When the latter action of Kroger is carried to completion, Kroger will be enabled to sell its own products, manufactured in its own plant, at retail in its own stores at whatever price it chooses, and in addition will be enabled to compete with other dairy processors for 12 per cent of the remaining market.

We hold that the mere construction of the processing plant by Kroger will not constitute a violation of Section 2 of the Sherman Antitrust Act. It may well be (and as to this we express no opinion) that Kroger's conduct and acts subsequent to the completion of the plant will be such as to entitle plaintiffs to relief, either injunctive or otherwise.

Defendant has not questioned the propriety of the class action procedure. There is, however, a serious question concerning the applicability of Rule 23 to the instant factual situation, a question we do not now determine in view of our basic ruling. We note the absence of

any allegation that the named plaintiffs, or any of them, presently sell fluid milk or any other dairy products to Kroger, or if so, which products and in which part of the trade territory. So, too, the named plaintiffs do not allege to what extent, they, or any of them, do business in any one or more of the towns and cities in which Kroger operates retail food stores in the 6-state area, or the extent to which the named plaintiffs are affected by Kroger's sales therein of any specific dairy product. Moreover, plaintiffs do not explain the significance of their use of the term "St. Louis, Missouri, Trade Territory", unless by that term is simply meant the area in which are located the Kroger stores which Kroger intends to supply out of the processing plant being constructed.

In the present posture of the case, we conclude that plaintiffs have failed to state a claim upon which relief can be granted, and that defendant's motion to dismiss should be and it is hereby sustained.