HILAND DAIRY, INC., Reiss Dairy, Inc., and Sunny Hill Farms Dairy Company, Inc., Appellants,

v.

The KROGER COMPANY, Appellee.

No. 19122.

United States Court of Appeals
Eighth Circuit.

Oct. 31, 1968.

**970**

Gray L. Dorsey, Chesterfield, Mo., for appellants; Edward F. O'Herin, of O'Herin & Newberry, Malden, Mo., and Lynn C. Paulson, Washington, D. C., were on the briefs.

Norman K. Diamond, of Arnold & Porter, Washington, D. C., for appellee; Peter K. Bleakley, Washington, D. C., J. Terrell Vaughan and John P. Emde, of Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., and George A. Leonard, Gen. Counsel, The Kroger Co., Cincinnati, Ohio, were on the brief.

Before VAN OOSTERHOUT, Chief Judge, and GIBSON and BRIGHT, Circuit Judges.

GIBSON, Circuit Judge.

Appellants, plaintiffs below, seek a trial on the merits of their class complaint against appellee, The Kroger Company, for an alleged attempt to monopolize the milk and dairy business in the St. Louis, Mo., Trade Territory in violation of § 2 of the Sherman Anti-Trust Act, 15 U.S.C. § 2. The District Court[1] dismissed the complaint on motion for failure to state a claim on which relief could be granted.

The plaintiffs, Highland Dairy, Inc., Reiss Dairy, Inc., and Sunny Hill Farms Dairy Company, Inc., are engaged in the buying and processing of raw milk and distributing and processing of fluid milk and other dairy products at wholesale and retail in the St. Louis, Mo., Trade Territory, a geographical area denominated by them as an area within 250 miles more or less of St. Louis, Missouri. Highland Dairy has its principal office at Springfield, Missouri; Reiss Dairy at Sikeston, Missouri; and Sunny Hill Farms Dairy at Cape Girardeau, Missouri. Defendant, The Kroger Company, operates a national chain of retail grocery stores approximately 1500 in number located in 30 states, with its principal office at Cincinnati, Ohio. It is alleged to be the second largest retail food chain in the United States and has net annual sales exceeding 2.6 billion dollars. In addition to the retail stores, Kroger operates other plants and businesses, bakeries, dairies, a coffee roasting plant and various food and non-edible product enterprises that complement and are allied to its overall operation as a food chain. It has more than 200 retail stores in the St. Louis Trade Territory (located in Missouri, Iowa, Illinois, Kentucky, Tennessee, and Arkansas) in which it sells approximately 8 per cent of the processed fluid milk and other dairy products at the retail level. The plaintiffs-appellants will be referred to in this opinion as "plaintiffs" and the defendant-appellee as either "defendant" or "Kroger."

Plaintiffs' complaint seeks to enjoin Kroger from building a dairy processing plant in the St. Louis Trade area, having a capacity to supply more than 20 per cent of the total consumers' demand, on the basis that such plant would give Kroger the power to impose unreasonable restrictions on the sale and distribution of fluid milk and other dairy products in interstate trade and would constitute an attempt to monopolize in violation of § 2 of the Sherman Anti-Trust Act.

This is not a case of a conspiracy, combination or merger to violate §§ 1 and 2 of the Sherman Act, nor is it one based on the commission of acts, lawful or otherwise, that place an unreasonable restriction on competition or lessen competition; but represents an attempt to

---

1. The District Court's Memorandum Opinion by The Honorable John K. Regan is reported at 274 F.Supp. 966 (E.D.Mo. 1967).

keep Kroger out of the dairy field on the charge in the complaint that the entry into this field constitutes an attempt to monopolize under § 2 of the Act. The gist of the complaint is that the building of the plant with the specific intent to monopolize constitutes a proscribed attempt to monopolize under § 2.[2]

■ Plaintiffs' position is that the purpose of §§ 1 and 2 of the Sherman Anti-Trust Act is to prevent monopolistic restrictions on competition and that every act or transaction, regardless of form, that has for its purpose the restriction of competition is prohibited under the Act. They recognize the teaching of Standard Oil Company of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911) that qualifies the proscription to unreasonable restrictive acts as noted at p. 58, p. 515 of 31 S.Ct.: "all contracts or acts which were unreasonably restrictive of competitive conditions" and at p. 60, 31 S.Ct. 502 to any "undue restraint" of commerce, as measured by the common law standard of reasonableness. Contracts or acts under the common law standard could be unreasonably restrictive (1) when inherently so, "from the nature or character of the contract or act" (2) inferentially, where "the surrounding circumstances" are such as to justify the conclusion that they were entered into not for bona fide competitive reasons but in order to gain by injuring competition through price, production, or quality control, *Standard Oil,* supra at 58, 31 S.Ct. 502.[3]

■ The essential doctrines of *Standard Oil* have been adhered to by the Court in succeeding cases. Concededly, the purpose of the Sherman Act is to preserve a system of free competition. This means no unreasonable or undue restraints are to be imposed on our competitive economic system so as to hinder or retard the free interplay of vital competition in the marketplace. The public is to be protected from the evils incident to monopolistic practices.

■ Plaintiffs admit that under § 2 the attempt to monopolize must be "likely to accomplish" monopolization, Kansas City Star Company v. United States, 240 F.2d 643, 663 (8 Cir. 1957), cert. denied 354 U.S. 923, 77 S.Ct. 1381, 1 L. Ed.2d 1438, or afford a "dangerous probability of" monopolization, American Tobacco Co. v. United States, 328 U.S. 781, 785, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946). Specific intent to monopolize must be well pleaded and proved. They, however, contend that Kroger's acquisition by internal expansion of a dairy facility with capacity to supply 20 per cent of the market would be likely to accomplish monopolization under present trade practices; would enable Kroger to impose handicaps on competitors; and Kroger's motive for acquiring power to control prices in milk processing is to use dairy "loss leaders" to get more store traffic and thus increase its volume and its profit margin on other retail sales.

Kroger maintains the complaint on its face is insufficient to show any possibility of a finding of "dangerous probability of monopoly" which is a prerequisite to an illegal attempt to monopolize; that Kroger's alleged 20 per cent of the market is far short of the minimum neces-

**2.** Section 2 of the Sherman Anti-Trust Act, 15 U.S.C. § 2 reads:
"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, * * * shall be deemed guilty of a misdemeanor * * *."

**3.** While a literal reading of the Sherman Act would condemn every contract or act that restricts the competitive operation of others, the Court recognized the necessity of applying the "rule of reason" in its interpretation of the statute, holding that only contracts or acts resulting in unreasonable or "undue" restraint of trade are prohibited. *Standard Oil,* supra at 62 of 221 U.S., 31 S.Ct. 502. In other words, honest and bona fide competition, even if restrictive of competitive conditions, is not a violation of the Act, as the success and growth of one competition often means injury to another.

sary to achieve monopoly; that Kroger under the admitted facts will not have the capacity to raise prices or exclude competition at will; that the complaint lacks the requisite allegations of any conduct establishing a specific intent to monopolize; that Kroger's internal expansion is sanctioned by the anti-trust laws; and that the plaintiffs seek to use the anti-trust laws to freeze market shares and to insulate them from the impact of competition—a subversion of the anti-trust laws.

The District Court viewed the complaint as insufficient, pointing out that no case has ever condemned internal expansion by a food retailer to provide for its own requirements; that the fact the market is being adequately served by the plaintiffs as a class is immaterial; that the mere building of the plant, even with the intent of using milk sales as a "loss leader," does not show a present intent of an attempt to monopolize; and concluded that § 2 of the Sherman Act does not prohibit internal expansion of a large food retailer to supply its own 8 per cent share of the market and an additional 12 per cent of the wholesale market. The District Court reasoned at 969 of 274 F.Supp.: "* * * [T]he present intent to destroy competition or build monopoly is essential to a finding of an 'attempt to monopolize' (Times-Picayune Pub. Co. v. United States, 345 U.S. 594, 626, 73 S.Ct. 872, 97 L.Ed. 1277), but the attempt must be evidenced by the actions done with such intent." and then held:

"* * * [T]he mere construction of the processing plant by Kroger will not constitute a violation of Section 2 of the Sherman Antitrust Act. It may well be (and as to this we express no opinion) that Kroger's conduct and acts subsequent to the completion of the plant will be such as to entitle plaintiffs to relief, either injunctive or otherwise."

At the threshold of this review we are confronted with the contention that a motion to dismiss is not a proper procedure to test the merits of plaintiffs' case as the plaintiffs have not had opportunity to elaborate and adduce evidence in support of their allegations. We likewise feel that a motion to dismiss and even a summary judgment proceeding do not generally afford a satisfactory vehicle for disposing of complex issues. The United States Supreme Court in First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968), however, approved the use of a summary judgment procedure in a complex antitrust action, stating at 288, at 1592 of 88 S.Ct.:

"Thus neither precedent nor logic supports petitioner's contention that the evidence to which he points is significantly probative of conspiracy and therefore, we hold that on the facts as shown summary judgment was correctly awarded to respondent."

and rejected the contention that Rule 56(e), Fed.R.Civ.P., is not applicable to complex anti-trust cases and that plaintiffs should have a hearing on the merits of their complaint either before the court or a jury, with this pertinent observation, at 290, at 1593 of 88 S.Ct.:

"While we recognize the importance of preserving litigants' rights to a trial on their claims, we are not prepared to extend those rights to the point of requiring that anyone who files an antitrust complaint setting forth a valid cause of action be entitled to a full-dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint."

Although we realize that a summary judgment proceeding presents different considerations than does a motion to dismiss, we think the same rationale can be applied in disposing of litigation on a motion to dismiss where well-pleaded allegations are not sufficient to base a claim upon which relief can be granted. And there is nothing in the nature of complex anti-trust litigation that would make inapplicable this procedure.

A motion to dismiss for failure to state a cause of action can serve a useful purpose in disposing of legal issues with a minimum of time and expense to the interested parties and is applicable to an anti-trust complaint. In testing the legal sufficiency of the complaint the well-pleaded allegations are taken as admitted but conclusions of law and unreasonable inferences or unwarranted deductions of fact are not admitted. See, 2A Moore's Federal Practice § 12.08, p. 2244.

The well-pleaded allegations are that Kroger is a large national chain possessing great assets and presently controlling 8 per cent of the market in question, that it intends to (and did)[4] build a processing plant for milk and dairy products capable of supplying 20 per cent of that market which includes its captive market of 8 per cent, that it uses milk as a "loss leader", that existing processors have a capacity to and are effectively serving the needs of the territory, present and future, that the dairy facility will endow Kroger with the power to lower prices but not to raise prices, that it may attract customers by the use of milk as a "loss leader" and sell to these customers other items at higher prices, and that plaintiffs would be adversely affected by the entry of Kroger in the wholesale dairy market.

Accepting plaintiffs' premise that the Sherman Act prohibits any kind of act or practice that unduly restrains trade or monopolizes, we do not think any case has gone as far as the plaintiffs seek to journey in this one of protecting their market shares from competition of an internal expansion of Kroger into the St. Louis, Mo., Trade Territory; nor do we think the well-pleaded facts allege an attempt to monopolize in violation of § 2 of the Sherman Act.

Plaintiffs cite many cases dealing with a monopolization of the market and cases of unfair or predatory practices that unduly restrict competition. United States of America v. American Tobacco Company, 221 U.S. 106, 31 S.Ct. 632, 55 L.Ed. 663 (1911) concerns a combination in restraint of trade, and exaction of unreasonable agreements not to compete and price-cutting to eliminate competitors; Eastern States Retail Lumber Dealers' Association v. United States, 234 U.S. 600, 34 S.Ct. 951, 58 L. Ed. 1490 (1914), a refusal by retailers to buy from wholesale lumber dealers who sold directly to customers—a combination and a conspiracy in restraint of trade; Eastman Kodak Company of New York v. Southern Photo Materials Company, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927), purchase of competitors, unreasonable agreements not to compete, and retail price-fixing; Story Parchment Company v. Patterson Parchment Paper Company, 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931), conspiracy to maintain uniform prices and price-cutting to eliminate a competitor; United States v. Swift & Company, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), divisions of territories, control of market journals and stockyard facilities; United States v. Pullman Co., 50 F.Supp. 123 (E.D.Pa.1943), aff'd per curiam 330 U.S. 806, 67 S.Ct. 1078, 91 L.Ed. 1263, exclusive dealing, refusal of service except in Pullman-owned cars, control of manufacture of sleeping cars, long-term contracts. These and many other cases dealing with conspiracies, monopolistic control of the market, tie-in sales and price-cutting to eliminate competitors are not in point. All of those cases are concerned with either an actual or a dangerous probability of monopolization of the market, or deal with actual acts or conduct that have the present effect of unduly restricting competition.

4. While plaintiffs sought an injunction to enjoin Kroger from building the dairy facility they did not ask for a restraining order nor post a bond for a preliminary injunction. Now, that which they sought to enjoin having already been built, plaintiffs admit that their prayer should be changed to a request that Kroger be not allowed to attempt to monopolize the milk business.

■ An unlawful attempt to monopolize presupposes a "dangerous probability" of monopolization if the attempt is successful. American Tobacco Co. v. United States, 328 U.S. 781, 784–785, 815, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); Kansas City Star Company v. United States, 240 F.2d 643, 663 (8 Cir. 1957), cert. denied 354 U.S. 923, 77 S.Ct. 1381, 1 L.Ed.2d 1438; John Wright & Associates, Inc. v. Ullrich, 328 F.2d 474, 478 (8 Cir. 1964). Twenty per cent alone of a market would be insufficient to achieve a monopoly. While size is an earmark of monopoly power,[5] a substantial part of the market must be controlled by the monopolist to enable the raising and lowering of prices and the undue restriction on competition. Of nine cases condemning monopolies under § 2 of the Act the percentage of market share ranges from 70 per cent in United States v. Paramount Pictures, Inc., 334 U.S. 131, 167, 68 S.Ct. 915, 92 L.Ed. 1260 (1948) to 100 per cent in the United States v. Pullman Co., supra.[6]

The United States Supreme Court in United States v. United States Steel Corporation, 251 U.S. 417, 444, 40 S.Ct. 293, 297, 64 L.Ed. 343, 8 A.L.R. 1121 (1920) refused to hold a monopoly existed on a market share of 50 per cent or less, reasoning "[t]he power attained was much greater than that possessed by any one competitor—it was not greater than that possessed by all of them. Monopoly, therefore, was not achieved * * *." In considering the question of monopoly in United States v. Aluminum Co. of America, 148 F.2d 416, 424 (2 Cir. 1945), the Court held defendant's 90 per cent of the market was a monopoly but that "* * * it is doubtful whether sixty or sixty-four per cent would be enough and certainly thirty-three per cent is not."

■ We need not decide in this case what percentage less than 50 per cent alone might produce a monopoly under certain circumstances peculiar to the market concerned, but we do think a 20 per cent market share under the circumstances of this case is competitively inadequate to sustain a monopoly and thus permit price dictation and the ability to exclude competition. In Kansas City Star, supra, this Court quoting American Tobacco Co. v. United States, 328

5. See, Report of Attorney General's National Committee to Study the Antitrust Laws (1955) at 49.

6. The nine cases considered are:

| | Per Cent Market Share |
|---|---|
| United States of America v. American Tobacco Company, 221 U.S. 106, 162, 31 S.Ct. 632, 55 L.Ed. 663 (1911) | 86% |
| Standard Oil Company of New Jersey v. United States, 221 U.S. 1, 33, 31 S.Ct. 502, 55 L.Ed. 619 (1911) | 90% |
| United States v. Eastman Kodak Co., 226 F. 62, 79 (W.D. N.Y.1915), appeal dismissed, 255 U.S. 578, 41 S.Ct. 321, 65 L.Ed. 795 | 75–80% |
| United States v. Pullman Co., 50 F.Supp. 123, 135 (E.D.Pa. 1943), aff'd per curiam, 330 U.S. 806, 67 S.Ct. 1078, 91 L. Ed. 1263 | 100% |
| United States v. Aluminum Co. of America, 148 F.2d 416, 425 (2 Cir. 1945) | 90% |
| United States v. Paramount Pictures, Inc., 334 U.S. 131, 167, 68 S.Ct. 915, 92 L.Ed. 1260 (1948) | 70% |
| United States v. United Shoe Machinery Corp., 110 F.Supp. 295, 343 (D.Mass.1953), aff'd per curiam, 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910 | 75% |
| International Boxing Club of New York, Inc. v. United States, 358 U.S. 242, 249, 79 S.Ct. 245, 3 L.Ed.2d 270 (1959) | 81% |
| United States v. Grinnell Corp., 384 U.S. 563, 567, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966) | 87% |

U.S. at 811, 66 S.Ct. 1125, 90 L.Ed. 1575, recognized that the hallmark of monopoly is that "* * * *power exists to raise prices or to exclude competition when it is desired to do so."* 240 F.2d at 663. Admittedly Kroger will not possess the power to raise milk prices. The power to lower milk prices by using milk as a "loss leader" and recouping by higher prices on other items will not bear analysis as Kroger concededly has no monopoly in the retail grocery field. Its ability to raise prices above the market on other items appears speculative and is not warranted in view of the general competition in the market place. Also in the wholesale market for milk and dairy products its position is inferior to the combined shares of 67 other processors (including some of the giants of the industry, such as National Dairy Products, Foremost, Borden), possessing ample capacity to supply the entire market. Plaintiffs admit in their brief that "Kroger will be a newcomer in milk processing, have a relatively small share of the market, and will face competition from already established competitors some of whom are national giants in the milk business." Kroger's entry in the wholesale market in St. Louis, Mo., Trade Area will increase competition and will probably adversely affect many of the present operators, but it would not establish a monopoly for Kroger in that field. The "loss leader" argument does not present a present basis for relief as (1) it cannot be the predicate for attaining monopoly and (2) it ignores state and federal laws and Federal Trade Commission regulations against predatory trade practices. Kroger still must comply with rather extensive state laws on milk processing and distribution and with the general requirements of the Sherman Act proscribing acts that unreasonably restrict competition. Kroger could not operate at ruinous wholesale prices as it lacks the market dominance to recoup on other grocery items, it admittedly not having a monopoly in that field, nor does it appear that it could achieve ultimate power to raise dairy prices at will in order to recoup. This does not mean that Kroger has, nor does the District Court's decision clothe Kroger with, the right to indulge in predatory practices, in unfair competition or in the commission of acts that would unreasonably restrict competition.

Plaintiffs' complaint is not based on unfair trade practices or acts unduly restrictive of competition but on the subjective intent of Kroger to attempt a monopolization of the market in the dairy field. The complaint fails to allege acts or conduct which would show the requisite intent. A mere allegation of an attempt to monopolize is a conclusion of law and about all anyone could say is that Kroger would have the power potentially to engage in some unfair and predatory practices in this field, but there is no showing of unfair or predatory practices. And any future operations are subject to the proscription of federal and state laws that condemn monopolies and unfair and predatory trade practices that unduly restrict competition.

■ The specific intent necessary to support an attempted monopolization under § 2 must be shown by conduct or acts from which a wrongful intent can be inferred. Union Leader Corporation v. Newspapers of New England, Inc., 284 F.2d 582, 584 (1 Cir. 1960), cert. denied 365 U.S. 833, 81 S.Ct. 747, 5 L. Ed.2d 744; Kansas City Star Company v. United States, supra, 663 of 240 F.2d. No present acts are here alleged nor is there any allegation that Kroger has used its existing food processing and manufacturing facilities in an attempt to monopolize the market for its other products. Kroger, under plaintiffs' theory, could use as a "loss leader" any of the other products it processes or manufactures to monopolize the market for such products. It has not done so and probably could not do so, even if desired, as it has not achieved a dominance of the market necessary to create a monopoly.

As a general proposition internal expansion is preferable to growth by

merger or purchase. As viewed in United States v. Philadelphia National Bank, 374 U.S. 321, 370, 83 S.Ct. 1715, 1745, 10 L.Ed.2d 915 (1963) " * * * corporate growth by internal expansion is socially preferable to growth by acquisition." And as analyzed in Brown Shoe Co., Inc. v. United States, 370 U.S. 94, 345 f.n. 72, 82 S.Ct. 1502, 1534, 8 L.Ed.2d 510 (1962):

"A company's history of expansion through mergers presents a different economic picture than a history of expansion through unilateral growth. Internal expansion is more likely to be the result of increased demand for the company's products and is more likely to provide increased investment in plants, more jobs and greater output. Conversely, expansion through merger is more likely to reduce available consumer choice while providing no increase in industry capacity, jobs or output."

The only case condemning internal expansion is United States v. Aluminum Co. of America, 148 F.2d 416, 430 (2 Cir. 1945). This case is unique as the Aluminum Company had a present monopoly of the market, of 90 per cent (as an original entry in a new field—*American Tobacco Co.*, supra at 786 of 328 U. S., 66 S.Ct. 1125) and had kept increasing its capacity to anticipate future needs so as to discourage and eliminate competition. These facts are not applicable to the dairy market.

This brings us to the line of cases cited by plaintiffs holding that certain acts in the nature of unfair trade practices violated the Sherman Act. Kansas City Star Company v. United States, supra, condemned a tie-in advertising practice and a blacklisting of firms that patronized a competitor. Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959) condemned the practice of an appliance chain restricting competition by using its buying power to deny a source of competitive supply to the plaintiff, thus placing the plaintiff at a competitive disadvantage in not being able to pur-

chase certain brands of refrigerators, stoves, washing machines and electronic equipment on the same terms of sale and delivery as the defendant. *Klor's* held that this practice had a monopolistic tendency which interfered with the natural flow of an appreciable amount of interstate commerce, at 211 of 359 U.S., 79 S.Ct. 705. In Simpson v. Union Oil Co. of California, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), the Court found that termination of the lease of a retail dealer for refusal to comply with a resale price maintenance scheme constituted an actionable wrong as a restraint of trade or monopolistic practice that had an impact on the market. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 468–469, 82 S.Ct. 486, 489, 7 L.Ed.2d 458 (1962) viewed the cancellation by CBS of an affiliate TV station in Milwaukee and the purchase of another TV station there by it as sufficient to sustain an anti-trust action under § 2 against a summary judgment attack where these acts were alleged to constitute "* * * unlawful conduct or agreement with others or were conceived in a purpose to unreasonably restrain trade, control a market, or monopolize," [stating that] "then such conduct might well run afoul of the Sherman Law." The giving of secret rebates, Bergjans Farm Dairy Co. v. Sanitary Milk Producers, 241 F.Supp. 476, 483, 485 (E.D. Mo.1965), aff'd, Sanitary Milk Producers v. Bergjans Farm Dairy Incorporated, 368 F.2d 679 (8 Cir. 1966), and other cases cited by the plaintiffs all condemn the undue restriction of competition. Market dominance or monopoly is not a prerequisite in this type of case because the acts complained of, even if lawful, have an unreasonable restraint on trade and unduly hinder the free flow of competition.

In the case at bar there are no acts or conduct alleged which the plaintiffs would have the court condemn except the building of the dairy facility. This in itself is not an unfair competitive act or predatory trade practice. Plaintiffs contend that Kroger would ac-

quire a strategic aspect of the market with its dairy facility, but this appears too speculative and not warranted under the facts alleged in the complaint and is thus insufficient to prohibit Kroger's entry into this field by way of internal expansion.

In dealing with § 7 of the Clayton Act (15 U.S.C. § 18), the United States Supreme Court in Brown Shoe Co., Inc. v. United States, 370 U.S. 294, 320, 82 S. Ct. 1502, 1521 (1962) said "* * * the legislative history illuminates congressional concern with the protection of *competition,* not *competitors* * * *." Plaintiffs' market shares are not protected by the anti-trust laws and they have no legal basis for precluding competition of Kroger in their field. This is all the District Court held, and, of course, is the narrow holding of our affirmance upon appeal. Plaintiffs are not foreclosed by this decision in protecting themselves against any unfair trade practice or predatory acts that are unreasonably restrictive of competition in violation of the anti-trust and other laws.

Judgment affirmed.