**NORFOLK MONUMENT COMPANY, Inc., Plaintiff,**

v.

**WOODLAWN MEMORIAL GARDENS, INCORPORATED et al., Defendants.**

Civ. A. No. 5331.

United States District Court
E. D. Virginia,
Norfolk Division.

Oct. 3, 1967.

Howard I. Legum, Fine, Fine, Legum & Fine, Norfolk, Va., for plaintiff.

Edwin C. Kellam, Michael E. Bowerman, Kellam & Kellam, Norfolk, Va., for Woodlawn Memorial Gardens, Inc.

William C. Worthington, Ransom W. Etheridge, Worthington, White & Harper, Norfolk, Va., for Rosewood Memorial Park, Inc., and Princess Anne Memorial Park, Inc.

Clyde W. Cooper, Cooper, Spong & Davis, Portsmouth, Va., for Greenlawn Cemetery Park Corp.

Bernard Glasser, Norfolk, Va., for Roosevelt Memorial Park and Cemetery Corp.

Robert H. Patterson, Jr., McGuire, Woods & Battle, Richmond, Va., for Jas. H. Matthews & Co. of Va. and Jas. H. Matthews & Co. of Pa.

## MEMORANDUM

MacKENZIE, District Judge.

The plaintiff, Norfolk Monument Company, is a local retail dealer in cemetery

monuments and offers as part of its line, bronze cemetery markers which it sells and also installs.

The defendants are Jas. H. Matthews & Co., a cemetery marker manufacturer and wholesaler, Jas. H. Matthews & Co. of Virginia, a printing material distributor, and four memorial park type cemeteries in the Norfolk, Virginia area, namely, Woodlawn Memorial Gardens, Incorporated, Princess Anne Memorial Park, Incorporated, Rosewood Memorial Park, Incorporated, and Greenlawn Cemetery Park Corporation.

This suit was instituted on December 16, 1965, seeking treble damages and injunctive relief under the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1 and 2 et seq., and charges that the " * * * said defendants have combined and conspired with the co-conspirators to monopolize, have attempted to monopolize, and have monopolized in aforesaid interstate trade and commerce in the manufacture, sale and distribution of the markers, in violation of Section 2 of the Sherman Act * * *."

Specifically, the complaint says that the conspiracy is (a) aimed at preventing and restricting the sale of bronze markers in the defendants' cemeteries; (b) that defendants' cemeteries buy all their requirements from Matthews; (c) that markers, to be acceptable for installation in defendants' cemeteries, must be of a specific alloy content; (d) the alloy content of markers must be certificated; (e) defendants' cemeteries have unreasonable and illegal regulations militating against the sale of plaintiff's markers; (f) each of the defendant cemeteries refuses to allow anyone to install markers in its cemetery except itself; and (g) that the charges of each of the defendants for installation make it impossible for the plaintiff to compete with the sale of markers owned by the defendants' cemeteries, themselves.

Also, the plaintiff charges that the defendants, Matthews, have participated in conspiracy meetings with the defendant cemeteries; that the defendants, Matthews, have provided assistance to the conspiracy practices of the cemeteries; that the defendants, Matthews, have prepared and distributed a copy of rules and regulations containing restrictive material concerning sale of markers, and that there are no grave markers installed in any of the defendants' cemeteries, other than those of Matthews.

To the complaint all of the defendants have filed (1) Motions to Dismiss for lack of jurisdiction in that there is no substantial impairment of Interstate Commerce and in the alternative, (2) Motions for Summary Judgment based upon exhaustive discovery, production of documents, affidavits and interrogatories.

In this case the "flow" or "current" of the markers in interstate commerce to the point of installation at the grave site is much more discernible than the vaults in Lawson v. Woodmere, etc., 4th Cir., 217 F.2d 148 (1954). There the vaults were purchased and stored on the cemetery property and resold from stock on hand to a local purchaser for local use. Judge Dobie was inclined, in *Lawson,* to believe that the "flow" of interstate commerce had ceased. Here, however, the bronze markers must be handled by the out of state manufacturer in each individual sale as the proper inscriptions of name, date of death, etc., are added to each tablet. Under some arrangements, the Matthews Company agrees to a continuing obligation to accept the bronze markers back at a later date to fill in the information as to date of death of a surviving spouse; or, in the case of a "pre-need" sale, to accept the tablets back for proper inscription when bought by the deceased before his death.

The chain of events from the sale of a tablet manufactured in Pennsylvania, to a local cemetery, and resold by the cemetery to a local user, but which resale requires assistance of the Pennsylvania manufacturer in each individual sale as to applicable lettering, and with obligations on the out of state manufacturer to receive the tablet back later from the buyer, through the cemetery, for further inscription and handling, is

much more perceptibly in an interstate stream than the vaults in *Lawson*. While the views expressed are unnecessary in light of the ruling hereinafter made on defendants' motions for summary judgment, if called upon to do so, the Court would overrule the Motions to Dismiss for lack of jurisdiction.

But the Motions for Summary Judgment present a different matter entirely. Conceding the necessary interstate commerce involvement to warrant jurisdiction it does not appear that a trial could avail the plaintiff anything.

The plaintiff corporation's principal officer, Mr. C. C. Gregory, has testified exhaustively under appropriate depositions and has been ordered to produce all other evidence tending to prove conspiracy. In answer to specific questions he has admitted that he has no letters, agreements, correspondence, or any other testimonials to a conspiracy among the several defendants that he has not produced. The evidence he has offered does not show conspiracy.

Plaintiff's allegations that Matthews would sell only to cemeteries is negated by its own admission that it purchased from Matthews as late as 1965 and terminated such purchases only because it did not like the Matthews product and because Matthews was then a defendant in this suit.

Plaintiff's allegation that the defendant cemeteries bought only from Matthews was founded apparently on an inspection by the plaintiff's President of these cemeteries which indicated the installation of many of Matthews markers. He admitted, however, that he saw others and had had his company's markers installed therein on occasion. It was further shown that one defendant cemetery had no Matthews markers at all, that some had as many as fifty per cent (50%) of a different brand; and that a composite reading of all of the installations in all of the cemeteries showed at least thirty per cent (30%) of a different manufacturer.

Plaintiff's allegation that it is not allowed to install markers in the defendant cemeteries is admitted by the defendants. Each reserves to itself the right to install all markers, regardless of from whom purchased. In view of the continuing obligation of perpetual care imposed upon the cemeteries, in its contracts with lot owners, in the light of the duty to preserve the cemetery property, all as provided in the cemetery sales agreements made plain to purchasers, such rules and regulations cannot be termed unreasonable. This applies as well to rules setting up specific alloy content as to bronze markers offered for installation and certification thereof.

The allegation that there is a conspiracy to be uncovered in the fact that the charges are made by the cemeteries for installation of markers, whether such charges be conscionable or unconscionable is not only not borne out but is denied in the plaintiff's own proffered exhibits of the different cemetery price scales. These show on their face a wide divergence of prices which would completely negative any systematic scheming or conscious parallelism. Plaintiff agreed that Matthews did not prescribe any charges.

The plaintiff knows of no meetings between the parties; the plaintiff argues that the book "Modern Cemeteries, —Recommendations for their Attorneys" prepared and distributed by Jas. H. Matthews & Co. of Pennsylvania in the interest of management and executives of the Modern Cemetery Industry, admittedly containing many suggestions picked up and inculcated into some of the defendant cemeteries' printed matters, is a hub of the conspiracy. Not so—the booklet itself an Exhibit, could only be described as a form book. It specifically points out on page 5, that it contains suggested standards of fair and reasonable regulations which the cemetery would be advised to adopt but says that " * * * Jas. H. Matthews & Co. is not permitted to make recommendations and suggests that the reader consult his own attorney".

The plaintiff has been required, under proper appropriate motions, to produce his case. He has said in depositions that he has no evidence other than that proffered. Clearly, the evidence fails to state a case under the Sherman Act.

To put these parties to trial runs full face into the intent and purpose of Rule 56 of the Federal Rules of Civil Procedure. There not only is no genuine issue of material fact of conspiracy, there simply is no evidence of conspiracy at all and the plaintiff has said he could produce nothing more.

Under the circumstances, the Motion for Summary Judgment filed by each of the defendants will be sustained and will be entered upon receipt of a proper Order prepared by attorneys for the defendants and endorsed by all counsel.