NORFOLK MONUMENT CO., INC. *v.* WOODLAWN
MEMORIAL GARDENS, INC., ET AL.

No. 1040.   Decided April 21, 1969.

*Howard I. Legum* and *Louis B. Fine* for petitioner.

*Frederick S. Albrink* for Woodlawn Memorial Gardens, Inc., *William C. Worthington* for Rosewood Memorial Park, Inc., et al., *Jefferson B. Brown* for Greenlawn Cemetery Park Corp., *Bernard Glasser* and *Stuart D. Glasser* for Roosevelt Memorial Park & Cemetery Corp., and *William H. King* for Jas. H. Matthews & Co. of Virginia et al., respondents.

PER CURIAM.

The petitioner, a retailer of burial monuments and bronze grave markers, brought this action for damages and injunctive relief under §§ 4 and 16 of the Clayton Act, 38 Stat. 731, 737, as amended, 15 U. S. C. §§ 15, 26,

alleging that the respondents had violated §§ 1 and 2 of the Sherman Act, 26 Stat. 209, as amended, 15 U. S. C. §§ 1, 2, by conspiring to monopolize and monopolizing the manufacture and sale of bronze grave markers. The respondents—Matthews, a manufacturer of such markers, and five operators of cemeteries (called "memorial parks") that sell the markers—were charged with having jointly adopted various restrictive devices to prevent, restrict, and discourage sales of markers by the petitioner for installation in the cemeteries. After extensive pretrial discovery, the District Court granted the respondents' motion for summary judgment, concluding that there was no material issue of fact and no evidence of conspiracy. 290 F. Supp. 1. The Court of Appeals affirmed. 404 F. 2d 1008.

We cannot agree that on the record before the District Court a jury could not have found that the respondents had conspired to exclude the petitioner from and monopolize the market for bronze grave markers. As Circuit Judge Craven pointed out in his dissenting opinion, the record disclosed the following conduct on the part of the respondents:

> "(1) Despite the unskilled nature of the work, all of the memorial parks refuse to permit the plaintiff to install markers sold by it; all of them insist that the work be done by the cemeteries themselves.
>
> "(2) None of the memorial parks charges lot owners a separate installation fee in the case of markers purchased from the cemeteries.
>
> "(3) All of the memorial parks require the payment of an installation fee by the plaintiff for installing markers purchased from the plaintiff. The plaintiff plausibly maintains that the actual cost of installation comes to about $3. Yet, enormous installation fees are charged plaintiff . . . .

"(4) All of the memorial parks require a specific alloy content in the bronze markers installed, and reserve the right to reject non-conforming markers. The alloy content requirement happens to be the same as manufacturer Matthews' markers and the same as is implicitly suggested in a pamphlet ('Modern Cemeteries') distributed by Matthews to its customers. All of the memorial parks except Roosevelt are customers of Matthews.

"(5) There is evidence that Greenlawn, Woodlawn and Princess Anne have attempted to dissuade lot owners from purchasing markers from the plaintiff. The affidavit of plaintiff's president states that numerous other incidents of this nature have occurred.

"(6) Defendant Matthews, in its pamphlet 'Modern Cemeteries,' suggests a number of practices which in effect erect competitive barriers to retailers other than the cemeteries themselves.

"(7) Many of these practices have been adopted by the memorial park defendants, as evidenced by affidavits in the record, and by the 'rule books' of Rosewood, Princess Anne and Greenlawn.

"(8) There is evidence of numerous visits to and conferences with the memorial parks by sales representatives of Matthews." 404 F. 2d, at 1012–1014.

The District Court found that the rules relating to the alloy content and installation of the markers were reasonable "[i]n view of the continuing obligation of perpetual care imposed upon the cemeteries, in [their] contracts with lot owners . . . ." 290 F. Supp., at 3. But the business justification for these restrictive rules was disputed by the petitioner, which proffered evidence that the markers required very little permanent care and that, in any event, the funds for that purpose were already provided from another source. The reasonableness of

the rules was a material question of fact whose resolution was the function of the jury and not of the court on a motion for summary judgment. The same is true of the inferences to be drawn from respondent Matthews' pamphlet. The District Court dismissed it as without any possible significance because it was a mere "form book," which "specifically points out . . . that it contains suggested standards of fair and reasonable regulations which the cemetery would be advised to adopt but says that '. . . Jas. H. Matthews & Co. is not permitted *to make recommendations and suggests that the reader consult his own attorney.'* " * 290 F. Supp., at 3. Again this self-serving disclaimer raised a question for the jury, and it surely did not alone conclusively rebut the petitioner's contention that the pamphlet evidenced an agreement among the respondents to participate in the alleged restrictive practices.

Nor do the other findings of the District Court necessarily dispel the inferences which the jury would be asked by the petitioner to draw. The District Court found, for example, that there was "a wide divergence of prices" charged for installation "which would completely negative any systematic scheming or conscious parallelism." 290 F. Supp., at 3. The petitioner's complaint, however, was not that the respondent cemeteries were charging uniform fees but that they were charging deliberately "excessive and unreasonable" fees for the purpose of injuring the petitioner. The fact that the District Court appeared to consider dispositive of the conspiracy allegations was that the petitioner's principal

---

*Judge Craven noted that the reason for the disclaimer is that "Matthews is under an injunction prohibiting it from making any suggestions to memorial parks as to the quality of markers installed in the parks." 404 F. 2d, at 1013, n. 6. The injunction was entered in one of the three consent decrees which have settled prior antitrust actions against Matthews. See 404 F. 2d, at 1014.

officer "admitted that he has no letters, agreements, correspondence, or any other testimonials to a conspiracy among the several defendants . . . ." 290 F. Supp., at 3. But it is settled that "[n]o formal agreement is necessary to constitute an unlawful conspiracy," *American Tobacco Co.* v. *United States,* 328 U. S. 781, 809, and that "business behavior is admissible circumstantial evidence from which the fact finder may infer agreement." *Theatre Enterprises, Inc.* v. *Paramount Film Distributing Corp.,* 346 U. S. 537, 540.

We express no opinion, of course, on the strength or weakness of the petitioner's case, but hold only that the alleged conspiracy had not been conclusively disproved by pretrial discovery and that there remained material issues of fact which could only be resolved by the jury after a plenary trial. As we have cautioned before, "summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." *Poller* v. *Columbia Broadcasting System,* 368 U. S. 464, 473.

The writ of certiorari is granted. The judgment is reversed, and the case is remanded for further proceedings in the District Court consistent with this opinion.

*It is so ordered.*

MR. JUSTICE HARLAN, MR. JUSTICE FORTAS, and MR. JUSTICE MARSHALL are of the opinion that certiorari should be denied.