Dominic **COSENTINO** and Richard **Brown**, Appellants,

v.

**CARVER–GREENFIELD CORPORATION**, Carver-Greenfield Omaha, Inc., **First Mid-America, Inc., Eastman Dillon-Union Securities & Co., City of Omaha and Omaha Pollution Control Corporation,** Appellees.

**No. 19934.**

United States Court of Appeals, Eighth Circuit.

Nov. 12, 1970.

Benjamin M. Wall, Omaha, Neb., for appellants.

Flavel A. Wright, Lincoln, Neb., and Robert J. Kutak, Omaha, Neb., for appellees.

Before MEHAFFY and BRIGHT, Circuit Judges, and HARPER, Chief District Judge.

BRIGHT, Circuit Judge.

Appellants, citizens and residents of Omaha, Nebraska, brought a treble damage action under Section 4 of the Clay-

ton Act, 15 U.S.C.A. § 15, alleging that the defendants conspired to monopolize and did monopolize commerce in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2, as to processes used to absorb wastes discharged by meat packinghouses in Omaha.

Generally, the pleadings disclosed that defendants entered into contracts to provide for the financing and construction of a plant which would use certain patented processes in extracting and collecting commercially valuable solid materials found in packinghouse wastes. The defendant city hoped, thereby, to lessen the amount of pollutants discharged into the Missouri River at Omaha.

The Omaha Pollution Control Corporation and the City of Omaha are named as nominal defendants because, appellants allege, "their past actions show that they would refuse to participate as plaintiffs." The Omaha Pollution Control Corporation, a non-profit corporation organized by the city, was to arrange the construction of the processing plant and was to finance the project by the issuance and sale of its corporate revenue bonds. The city agreed to lease the facility from the Omaha Pollution Control Corporation as well as to build certain ancillary sewage facilities which would be financed by the city's general obligation bonds. Defendant Eastman-Dillon and its Nebraska affiliate, defendant First Mid-America, contracted to market all of the Omaha Pollution Control Corporation bonds.

Defendant Carver-Greenfield Corporation licensed a subsidiary, defendant Carver-Greenfield Omaha, to use Carver-Greenfield's patents which were necessary for the plant's operation. Carver-Greenfield Omaha assumed the obligations of the city under the lease with the Omaha Pollution Control Corporation and agreed to pay a royalty to its parent corporation for use of the patents. The royalty payments and the rent payments were to be paid by Carver-Greenfield Omaha from the revenue generated by the operation of the plant.

The individual packinghouse operators, not parties here, also were to pay fees which would be applied to the rental obligation and to the retirement of the revenue bonds.

Appellants' complaint apparently is based upon the allegation that the defendants "conspired to misuse the patent rights of defendant Carver-Greenfield Corporation to induce the defendant City of Omaha to issue bonds, or to guarantee bonds of the defendant Omaha Pollution Control Corporation. * * *" In particular, the alleged Sherman Act violations were:

That economic studies generally available since 1959 have shown that meat packers, in order to stay competitive, would have to move out of their plants in Omaha to modern plants in smaller communities. That such facts were known to the defendants herein at the time of their actions herein complained of. That because of operating deficits to arise from said plant because of the actual removal of packers from Omaha, the exposure to loss of the defendant City of Omaha is the approximate total of said bonds and interest. That as a necessary part of said conspiracy the defendants conspired that the defendant Carver-Greenfield Corporation should tie its expiring principal patent to secondary patents whose life exceeded the term of the license agreement, and further require the defendant City of Omaha to agree never to contest the validity of any patent obtained by the defendant Carver-Greenfield Corporation during the term of the agreement (30 years after the issuance and sale of the bonds financing the project) and for 10 years thereafter. That such tying arrangement and agreement not to contest are per se violations of the aforesaid sections of the Sherman Antitrust Act.

Appellants argue that Omaha and its taxpayers were damaged in the sum of $10,920,000.00, which amount, trebled, along with reasonable attorney's fees

and costs, should be paid by defendants into the "registry" of the district court for disbursement as that court "may direct."

In an unreported district court decision, Chief Judge Robinson granted each of the defendants' motions to dismiss the complaint. His decision rested on two alternate grounds. First, he ruled that the appellants whether suing as a class or in some derivative capacity on behalf of the city were not within the "target area" of the alleged conspiracy or monopoly and, thus, could not bring this action under Section 4 of the Clayton Act. He doubted that the appellants could sue at all in any such derivative capacity. Second, Judge Robinson felt that even if the appellants were within the "target area", the complaint failed to state a cause of action because "the damages as alleged have no causal connection to the antitrust violations alleged." Appellants brought this appeal under 28 U.S.C.A. § 1291. We affirm on the grounds, as explained below, that appellants cannot maintain this action under the Clayton Act for alleged injury to the municipality arising from alleged Sherman Act violations. We find it unnecessary to consider the alternative ground for dismissal outlined by the district court concerning the failure to state a cause of action.

On this appeal, appellants raise no question concerning the validity of Judge Robinson's dismissal of their suit as a class action. Their contention here is that their complaint seeks damages derivatively on behalf of the City of Omaha.

Appellants first argue that under Rule 17(b)[1] of the Federal Rules of Civil Procedure the law of the State of Nebraska governs the "capacity" to sue in this derivative posture. Assuming this is true, see D'Ippolito v. Cities Service Company, 374 F.2d 643, 647 (2d Cir. 1967); Klebanow v. New York Produce Exchange, 344 F.2d 294, 296–297 (2d Cir. 1965), we find no Nebraska law permitting a citizen to sue on behalf of his municipality on the municipality's contractual or federal statutory claims. The Nebraska cases allow a taxpayer to sue on behalf of his municipality to recover those funds expended by it in violation of municipal ordinances or state statutes which prohibit a city official from having a personal financial interest in contracts with the city, Arthur v. Trindel, 168 Neb. 429, 96 N.W.2d 208 (1959); Heese v. Wenke, 161 Neb. 311, 73 N.W.2d 223 (1955); Neisius v. Henry, 142 Neb. 29, 5 N.W.2d 291 (1942), or where the particular contractual obligation was outside the city's power, Darnell v. City of Broken Bow, 139 Neb. 844, 299 N.W. 274 (1941). Absent special injury to the taxpayer or an illegal expenditure of public funds or an increase in the burden of municipal taxation, citizens lack capacity under Nebraska law to sue on behalf of their cities. Holland v. Brownville Grain Co., 174 Neb. 742, 119 N.W.2d 304 (1963); Martin v. City of Lincoln, 155 Neb. 845, 53 N.W.2d 923 (1952). None of these extraordinary situations is alleged here.[2] In all other cases Nebraska has entrusted to city officials the responsibility of protecting the municipality's in-

1. "(b) *Capacity to Sue or Be Sued.* The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed by a court of the United States to sue or be sued in a court of the United States is governed by Title 28, U.S.C., §§ 754 and 959(a)."

2. The only possible allegation by appellants of any illegality by the city is in appel-

terest. See Neb.R.R.S. 14–101, 14–809 (1943).[3]

Second, appellants attempt to construct a parallel between shareholders' rights in relation to their corporation and citizens' rights in regard to their municipality. Of course, a shareholder is not entitled to sue derivatively for antitrust claims for his corporation against third parties without showing an adequate equitable basis, such as management fraud, bad faith or breach of trust. See Stadin v. Union Electric Co., 309 F.2d 912, 921 (8th Cir. 1962), cert. denied 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415 (1963); Rogers v. American Can Co., 305 F.2d 297, 307–309 (3d Cir. 1962). The right to sue on private contracts ordinarily rests with the management of a private corporation. Similarly, the officers of a city possess broad discretion in conducting the municipality's day-to-day business. The responsibility of guarding the public against allegedly illegal acts rests with these officers, not with the ordinary citizen. A citizen of Omaha, Nebraska, cannot expect to elevate himself by means of a lawsuit to a position in which he can exercise the power of a public authority, at least absent abusive or illegal acts by city officials, which are not alleged in this case.

Appellants cite no case, and our research discloses none, which allows a private citizen to assert derivatively an antitrust claim on behalf of the city in which he lives. Under the circumstances alleged here, appellants' arguments fail to persuade us that they possess standing to bring this action.

While not unmindful of the great restraint to be exercised by a court in summarily dismissing an antitrust action, Norfolk Monument Co. v. Woodlawn Memorial Gardens, Inc., 394 U.S. 700, 704, 89 S.Ct. 1391, 22 L.Ed.2d 658 (1969), such dismissal may be appropriate in those cases where the allegations of the complaint are without sufficient merit. See, e. g., White Motor Co. v. United States, 372 U.S. 253, 259, 83 S. Ct. 696, 9 L.Ed.2d 738 (1963); Hiland Dairy, Inc. v. Kroger Company, 402 F.2d 968, 972 (8th Cir. 1968); Duff v. Kansas City Star Co., 299 F.2d 320 (8th Cir. 1962). Here we think it clear that appellants demonstrate no acceptable basis on which they can maintain this treble damage action on behalf of the City of Omaha.

Affirmed.

---

lants' complaint which states that the Omaha Pollution Control Corporation was organized "in violation of § 4.08, Home Rule Charter, City of Omaha, 1956." But appellants do not argue the basis for this charge nor do they contend that this fact creates one of those extraordinary situations which could possibly allow them to maintain this action.

3. At one time Nebraska statutes expressly allowed for some citizen's actions on be-

half of the city, see Nicklaus v. Abel Construction Co., 164 Neb. 842, 83 N.W.2d 904 (1957), but the statute has since been modified to exclude this language. Nebraska statutes still allow a taxpayer to defend a suit against a city if the municipality will not or does not defend. Neb.R.R.S. 14–810 (1943). See Lynch v. City of Omaha ex rel. Larson, 153 Neb. 147, 43 N.W.2d 589 (1950) (purpose of statute to protect the rights of city and taxpayer).