**SMOLKA CO., Inc., Plaintiff,**

v.

**The CENTRAL FOUNDRY COMPANY, Defendant.**

**No. 64 Civ. 953.**

United States District Court,
S. D. New York.

April 9, 1971.

Fine, Tofel, Corwin & Saxl, New York City, for plaintiff, Edwin L. Corwin, New York City, of counsel.

Royall, Koegel & Wells, New York City, for defendant, Stanley Godofsky, Guy C. Quinlan, Ian R. Gilbert, New York City, of counsel.

LASKER, District Judge.

Defendant moves for summary judgment on the second count of the amended complaint and on portions of the fourth count. The second count alleges violations of the Robinson-Patman Price Discrimination Act, 15 U.S.C.A. § 13 et seq., and the fourth count arises under the same Act and also under the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1 and 2.[1]

---

1. The second count alleges that defendant "discriminated against plaintiff by granting to its distributor in competition with plaintiff for the purpose of the sale to plaintiff's customer, a price so low and something of such great value that plaintiff was unable to compete for such business." Plaintiff's claim arises under 15 U.S.C.A. § 13 et seq., the Robinson-Patman Price Discrimination Act. The fourth count arises under both the Sherman Anti-Trust Act and the Robinson-Patman Price Discrimination Act, 15 U.S.C.A. §§ 1, 2 and 13. Defendant moves for summary judgment pursuant to Federal Rules of Civil Procedure on those portions of the fourth count identified as subdivisions F and N of the plaintiff's answer (verified April 6, 1967) to defendant's tenth interrogatory (dated November 28, 1966), and as subdivision P of plaintiff's supplemental answer to the same interrogatory (verified May 17, 1968). It alleges various actions by defendant designed to eliminate plaintiff as a competitor and to monopolize the sale of certain products in the metropolitan New York area. Subdivision F alleges as an action by defendant that it allowed two wholesalers a 2% discount for certain payments over various months during which their bids were made late to prevent plaintiff from competing with such wholesalers for sales to contractors. Subdivision N alleges that defendant sold to certain plumbing contractors at 2½% to 5% below prices charged to other plumbing contractors, preventing plaintiff from making any sales to such contractors. Subdivision P alleges that defendant paid a contractor (not one of plaintiff's customers) a sum of money equal to the price differential between the price charged it by defendant's wholesaler and the price offered by the plaintiff, in order to prevent plaintiff from competing for that contractor's business.

## BACKGROUND FACTS

Plaintiff, a plumbing supplies wholesaler, sells among its products cast iron soil products to contractors in the metropolitan New York area. These products are designed to carry away the waste products from sinks, toilets, etc., and they have their greatest use in the construction of multi-storied apartment buildings. Defendant manufactures cast iron soil products and sells both to wholesalers and directly to contractors. Prior to the period between January 1, 1962 and April 30, 1964 (stipulated by the parties to be the "relevant period"), the defendant was the major supplier of soil products in the metropolitan New York area and the exclusive supplier of revent fittings.

Before the relevant period, the plaintiff purchased some soil products from defendant. Thereafter, in 1962, the plaintiff entered into an agreement with Anniston Foundry to sell its oil products, including revent fittings, in competition with the defendant. The alleged unlawful price discriminations to lure away plaintiff's customers and the alleged antitrust violations to eliminate plaintiff's competition arise from this background. The facts of each count are treated separately.

### (a) Count Two

In late 1962, plaintiff arranged to sell soil products to a contractor named John Weil. In the past, Weil has used defendant's soil products. Plaintiff's president states that shortly after defendant became aware of the arrangement with Weil, defendant threatened not to renew a promissory note given by Weil and held by defendant if Weil bought the products sold by plaintiff. Defendant is further alleged to have interceded with the Franklin National Bank to have the bank urge use of defendant's products over those sold by plaintiff in the bank's Hanover Square Branch construction. Weil later cancelled its order with plaintiff and purchased defendant's products for the construction project. The purchases were made from the New York Plumbers Specialty Company ("NYPSCO"), a wholesaler carrying defendant's soil products. (Affidavit of Mortimer H. Smolka, president of plaintiff, sworn to May 26, 1970).

Plaintiff's president further states as facts which defendant does not here contest that in the spring of 1963 plaintiff assisted Weil in preparing a bid for plumbing contracting work in construction of a housing project called Concourse Village. The Anniston Foundry soil products prices were used in computing the bid, and Weil was awarded the project. Weil placed his order with the plaintiff. Defendant then offered to pay Weil, through the intermediary of the contractor for Concourse Village, a sum of money equal to the savings Weil would achieve by using the products sold by plaintiff. Defendant further allegedly pressured NYPSCO to cut its prices to Weil, and when NYPSCO balked defendant offered Weil a loan of $150,000 at 3% interest for two years plus sales of defendant's soil products to Weil through NYPSCO at 5% lower than plaintiff's price. Plaintiff's president reports that on or about October 23, 1963, Weil cancelled his order with plaintiff and placed an order for defendant's products with NYPSCO. (*Id.*)

### (b) Count 4, subdivisions F, N and P

The fourth count alleges a number of actions by the defendant in support of plaintiff's claims. Defendant seeks summary judgment on three of these acts only, isolated from the rest.

The first, subdivision F, alleges that defendant consistently allowed two competing plumbing wholesalers to take a 2% discount on partial as well as complete payments for shipments made anywhere from five to eleven months ear-

lier, although defendant's "published credit terms were in effect 2% discount upon payment within ten days after the month of shipment." (Affidavit of Mortimer H. Smolka, sworn to May 26, 1970, at p. 15). This cash discount amounted to a lower cost of defendant's merchandise, which permitted these wholesalers to sell defendant's products to contractors to the intentional exclusion of plaintiff.

The second, subdivision N, alleges that defendant, made a secret pricing arrangement with Jarcho Bros., Inc. to sell defendant's products to Jarcho at 2½% to 5% below the price charged to other major plumbing contractors. "Jarcho was clearly the largest plumbing contractor in the Metropolitan New York area" and "[b]y means of this secret price arrangement, defendant was able to exclude and keep excluded from this important business source any other competition, including plaintiff." (*Id.* at p. 17).

The third, subdivision P, alleges that defendant made a secret arrangement with the president of Alan Michel Plumbing, Inc., a contractor, that if Alan Michel Plumbing bought its soil products from NYPSCO, regardless of the fact that a better price could be had elsewhere, defendant would remit directly to Alan Michel Plumbing the cost differential. Plaintiff alleges that "the purpose of this conduct is to keep plaintiff from competing with defendant for Michel Plumbing's business," (*Id.* at p. 18), although it acknowledges that it never sold to Alan Michel Plumbing.

## DISCUSSION

### (a) *Count Two*

Defendant urges that plaintiff's complaint sets forth "a classic secondary-line injury case under the Robinson-Patman Act." (Affidavit of Guy C. Quin-

lan, sworn to March 27, 1970). Based upon this characterization, defendant contends that the complaint is defective as a matter of law because the plaintiff never alleges the essential element that it was a purchaser of defendant's products and because the facts clearly reveal that plaintiff never purchased any of defendant's products during the relevant period.

Plaintiff contests defendant's characterization and asserts that "this is clearly a case of 'primary-line' competition." (Memorandum in Opposition, at 10). This being so, plaintiff argues that defendant's contentions are without relevance because, being a direct competitor, plaintiff need not be a purchaser.

■ Plaintiff acknowledges that to prevail in its contentions that a primary-line injury exists it must establish that NYPSCO was used as a mere front for the defendant and that Weil was therefore dealing in substance with the defendant itself. See Federal Trade Commission v. Anheuser-Busch, Inc., 363 U. S. 536, 546, 80 S.Ct. 1267, 4 L.Ed.2d 1385 (1960); K. S. Corp. v. Chemstrand Corp., 198 F.Supp. 310, 313 (S.D.N.Y. 1961).

"A sales subsidiary's prices may not be deemed the parent's prices in contemplation of law, unless the parent directs or participates in the subsidiary's pricing decisions." Rowe, Price Discrimination under the Robinson-Patman Act, § 4.4, at 53 (1962).

See also *Id.* at 54, 161–2. The record here goes far toward establishing that the defendant bears the responsibility for the acts complained of, but it is by no means clear what the extent of its own control and responsibility is. Until this issue is resolved, no summary judgment is appropriate.

Defendant does not answer or rebut the statements of fact asserted by the plaintiff. Nor does the defendant an-

swer plaintiff's arguments that plaintiff's claim is for primary-line injury except by contending that the complaint alleges a secondary-line injury and, if so, that necessary facts and allegations are missing.

Because defendant argues points of law and not fact, it can only be inferred that it denies that defendant ever controlled NYPSCO or used it as a mere front. So long as the facts remain either undeveloped or in dispute as to the defendant's relationship with NYPSCO —as they do at this state—the motion for summary judgment is at least premature.[2]

### (b) *Count Four, subdivisions F, N and P*

Defendant urges that it should be granted summary judgment on the three subdivisions of the fourth count because: (1) As to F, plaintiff admits in a pretrial stipulation that it "has no evidence that any of the practices alleged in Subdivision F * * * had as their purpose eliminating plaintiff as a competitor * * *" (Affidavit of Guy C. Quinlan sworn to March 27, 1970, quoting pretrial stipulation 66), and there is no other issue to be tried. (2) As to N, plaintiff admits that the "price policy for Jarcho Bros., Inc. was established by Defendant prior to the relevant period" (*Id.*, quoting pretrial stipulation 70) (and therefore, according to defendant, the policy could not have been an attempt to eliminate plaintiff), and further, that damages are not specified. (3) As to P, "Plaintiff has no evidence in its possession at this time" showing that the arrangement between defendant and Alan Michel Plumbing had as its purpose the elimination of plaintiff (*Id.*, quoting plaintiff's answers to interrogatories), and again, that damages are not specified.

■ These grounds for summary judgment are insufficient to support the motion. Plaintiff properly observes that all the individual acts comprising its fourth count must be viewed as a unit. Plaintiff is entitled to establish at trial that all of defendant's acts were or became a part of defendant's alleged violations of the statutes. If plaintiff can demonstrate this to be the fact and can show damages arising out of the alleged acts, it would be entitled to relief. Herman Schwabe, Inc. v. United Shoe Machinery Corp., 297 F.2d 906, 909 (2d Cir. 1962). So long as the nexus between these facts and the remaining factual allegations of Count Four (and the damages attributable to such acts as a whole) remain undeveloped or in dispute, summary judgment cannot be granted.

■ As was stated in the discussion as to Count Two, so also as to Count Four the defendant does not deny the allegations of subdivisions F, N and P. Rather, defendant points to allegedly missing elements of evidence as to each of these subdivisions. Chief among these is the fact that plaintiff has not set forth damages flowing from each act. While plaintiff has stipulated that it must prove the amount of damages incurred if it is to prevail at trial, the fact that the damages are not set forth on this motion does not permit, much less necessitate, a grant of summary judgment for the defendant. Some of the damages may only be determined as the result of proof at trial. Until each subdivision is explored within the context of Count Four as a whole and the question of damage is fully developed, summary judgment may not be granted.

As to both counts, we are constrained to follow the guidance of the Supreme Court in Fortner Enterprises, Inc. v. United States Steel Corp., 394 U.S. 495,

---

2. Having determined that questions of fact preventing the grant of summary judgment exist as to this principal argument, the parties' discussion of the alternative ground relating to the "indirect purchaser doctrine" need not be reached here.

500, 89 S.Ct. 1252, 1257, 22 L.Ed.2d 495 (1969), there quoting Poller v. Columbia Broadcasting, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962):

"We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hall-mark of 'even handed justice.'"

This guidance was reiterated in Norfolk Monument Co. v. Woodlawn Memorial Gardens, 394 U.S. 700, 704, 89 S.Ct. 1391, 22 L.Ed.2d 658 (1969).

For the reasons stated above, the defendant's motion for partial summary judgment is denied.

It is so ordered.