**BROADCAST MUSIC, INC., Plaintiff,**

v.

**COLUMBIA BROADCASTING SYSTEM,
INC., et al., Defendants.**

**No. 70 Civ. 444.**

United States District Court,
S. D. New York.

March 23, 1972.

Hughes, Hubbard & Reed, New York City, for plaintiff; Amalya L. Kearse, George A. Davidson, New York City, Alan J. Kasen, of counsel.

Cahill, Gordon, Sonnett, Reindel & Ohl, New York City, for defendant National Broadcasting Co., Inc.; David R. Hyde, Kenneth W. Orce, New York City, of counsel.

Hawkins, Delafield & Wood, New York City, for defendant American Broadcasting Companies, Inc.; Clarence Fried, Philip R. Forlenza, New York City, of counsel.

LASKER, District Judge.

In this action brought by Broadcast Music, Inc. ("BMI") charging violations of the antitrust laws, breach of contract, and fraud, defendants National Broadcasting Company ("NBC") and American Broadcasting Companies, Inc. ("ABC") move for summary judgment pursuant to Rule 56, F.R.Civ.P. ABC also moves that, in the event its motion for summary judgment is granted, the state law contract claim against it be dismissed. Alternatively, ABC moves that if its application for summary judgment is denied, the antitrust claim be severed for trial and discovery be limited to that cause of action in the first instance. For the reasons set forth below, both motions for summary judgment are denied. ABC's motion to sever the antitrust claim and to limit discovery as to that count is granted.

## The Parties

BMI is a corporation in the business of granting nonexclusive licenses for the non-dramatic public performance for profit ("public performance licenses") of copyrighted musical compositions in its repertory. It acquires the right to grant such licenses from the owners of the copyright, and licenses broadcasting stations, networks, and other users of music.

ASCAP is an unincorporated association which, in competition with BMI, is a licensing agent, granting broadcast users nonexclusive licenses of musical compositions contained in its repertory.

CBS, NBC and ABC are licensees or "users" of BMI's repertory.

## Background

ASCAP was organized in 1914. From 1914 until 1940 ASCAP held a monopoly in the business of granting public performance licenses for music. In 1939, certain broadcasters, including CBS and NBC, organized BMI as a competitor of ASCAP. CBS and NBC sold their stock in BMI in 1959, and since that time have not had any proprietary interest in plaintiff. ASCAP and BMI are virtually exclusive competitors.

In 1941, the government sued ASCAP for violations of the antitrust laws. As a result of that litigation, a consent decree was entered in 1941 and amended in 1950. Under the amended judgment ASCAP is required to offer licenses for which ASCAP receives a fee based upon a fixed percentage of the licensee's revenues for a yearly period or upon a percentage of revenues from a particular program, depending on the type of license desired by the user. If ASCAP and the prospective licensee are unable to agree on a fee, the decree provides that the licensee may apply to this Court for the determination of a "reasonable fee." The decree also authorizes the Court to fix an interim fee to be paid

during the pendency of proceedings to set a reasonable fee.

Between 1962 and 1969 each of the networks operated on an interim fee basis with ASCAP. In March of 1969, CBS reached agreement with ASCAP on a fixed fee to be paid for the period 1962–1969. Judge Ryan of this Court approved the agreement, which called for substantial payment above the interim fee. Similar agreements between ASCAP on the one hand and NBC and ABC on the other were approved in April 1969 and May 1970, respectively.

### The Complaint

The thrust of BMI's antitrust claim is its contention that the "extraordinary" payments which CBS, NBC and ABC agreed in 1969 to pay to ASCAP were part of a conspiracy to drive BMI out of business.[1] It is alleged that ASCAP's purpose in entering into the conspiracy was to regain its former monopoly by using the payment from the networks to lure away BMI affiliates and thereby obtain greater royalties from users of music; and that the motive of CBS, NBC and ABC was to decrease the total amount of royalties to be paid by them to ASCAP, respectively, for licenses in the future.[2]

The second counts against NBC, CBS and ABC are for breaches of contract growing out of the networks' alleged failure to pay the amounts of license fees provided for in their respective agreements with BMI.[3] The third counts (against NBC and CBS only) claim fraud in connection with certain alleged assurances given BMI by NBC and CBS as to the rate bases upon which BMI would be paid.

### NBC'S Motion for Summary Judgment

NBC contends that the proof of record establishes as a matter of law that its motive in making the "extraordinary" payment to ASCAP was legitimate. According to NBC, the evidence establishes that the reasons it made the payment were: (1) Although it believed it had already overpaid ASCAP, after CBS, its principal competitor, had agreed to pay additional amounts to ASCAP in March 1969, it would have been "clearly unrealistic" for NBC one month later to take the position that its payments to ASCAP under the interim fee should be adjusted downward. (2) Its contract with ASCAP subjected it to large breach of contract claims by ASCAP not assertable under the BMI contract.[4] (3) The payments to ASCAP were approved by

1. "Pursuant to said contract, combination or conspiracy, CBS, NBC and ABC agreed with each other and with ASCAP to pay to ASCAP large sums of money, to raise and fix the prices paid by them to ASCAP for public performance licenses for the year 1969 and future years and to refuse to make proportionate payments to plaintiff, in order, *inter alia*, to enable ASCAP to attract new authors, composers and publishers and induce authors, composers and publishers currently under contract with plaintiff to terminate such contracts and to enter into contracts with ASCAP." (Amended Complaint, par. 20).

2. BMI contends that it was part of the conspiracy that the networks received assurances from ASCAP that ASCAP would not demand in the future higher license fees than the networks would otherwise be expected to pay.

3. This cause of action is based on ASCAP's representation that it was able to obtain the additional payments because it discovered that the networks had under-reported their income to ASCAP. BMI claims that these sums are also due it because BMI was to be paid on the same rate base as ASCAP.

4. The NBC–ASCAP contract provided that NBC had to pay ASCAP only on the basis of "time-on-the-air" rather than "gross receipts" *provided* NBC itemized the "time-on-the-air" receipts. NBC argues that one of the factors that led it to pay the large sum to ASCAP was that ASCAP was pressing a claim that it be paid on the basis of gross receipts because NBC had not itemized properly.

Judge Ryan and found to be "reasonable."

NBC takes the position that these justifications for the payments preclude any finding by the Court that there was an illegal purpose on the part of NBC.

*ABC's Motion for Summary Judgment*

ABC also claims that the "extraordinary" payments to ASCAP were motivated solely by innocent business reasons.

First, ABC contends that the record of the proceedings in United States v. ASCAP, Civil 13–95 (S.D.N.Y.), establishes that there was legitimate basis for the payments by ABC to ASCAP and that the payments "were anything but voluntary and in fact were the culmination of several years of bitter negotiations concerning the establishment of a 'reasonable license fee.'"

Second, ABC argues that BMI's contention that any payments made to AS-CAP should have resulted in proportionate payments to BMI (since, BMI claims, ABC's contracts with BMI and ASCAP are parallel, and ABC's failure to make proportionate payments to BMI is evidence of ABC's participation in the conspiracy to put BMI out of business) is simply wrong. ABC contends that its contracts with ASCAP and BMI were actually quite different and that, accordingly, no implication of illegal motive can be inferred from ABC's different treatment of the two.

Third, ABC asserts that it "certainly would have known" that ASCAP could not use the lump sum payment to lure away BMI affiliates because (a) such action would permit intervention by the government under the Amended Final Judgment in United States v. ASCAP, and (b) the ASCAP consent decree "required" ASCAP to distribute the monies received from license fees to the ASCAP members where compositions had been performed in the years in question.

Fourth, ABC argues that it would have had no motive to enter into the conspiracy because it could not have placed any reliance on assurances by ASCAP to keep license fees below the total which ASCAP and BMI would have charged if BMI had remained in existence.

Fifth, ABC maintains that its payment to ASCAP could not have been part of a conspiracy because ABC did not agree to pay ASCAP until May 1970, three months after BMI filed its antitrust complaint in this action against NBC and CBS, but prior to BMI's bringing suit against ABC itself.

*Discussion*

■ NBC's and ABC's motions for summary judgment are predicated on the same proposition—that on the record before us the *only* permissible inference that may be drawn is that the payments to ASCAP were prompted by innocent business considerations. Without indicating any view—and we hold none—as to what the evidence will ultimately establish, we disagree that it will be impossible as a matter of law for BMI to prove that the payments were made as part of a conspiracy in violation of law.

NBC's and ABC's positions on these motions do not eliminate factual issues, but, to the contrary, simply establish factual questions on the material proposition of motive. Although the explanations that NBC and ABC offer for the payments may constitute valid defenses, it is impossible on the basis of the record before us to determine that all possibility of illegal motive is disproved. NBC's and ABC's proof may establish that there were legitimate motives for their payments to ASCAP; but such proof will not necessarily foreclose BMI's establishing that there was illegal

motive as well. The two are not always mutually exclusive.[5]

The validity of BMI's antitrust claim depends exclusively on the motives for the networks' payments to ASCAP. In such a case, the Supreme Court has stated with utmost clarity on several occasions that it is improper for a trial court to grant summary judgment in favor of the defendant. The Supreme Court's directive in Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), is controlling:

> "We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.' "

The necessity to deny summary judgment is especially compelling when one considers the fact that in Poller discovery was apparently much farther advanced than in the present case. See Norfolk Monument Co. v. Woodlawn Memorial Gardens, Inc., 394 U.S. 700, 704, 89 S.Ct. 1391, 22 L.Ed.2d 658 (1969), where the Supreme Court reversed the lower court's granting of summary judgment even after extensive pretrial discovery because the alleged conspiracy had not been "conclusively disproved," quoting Poller, supra. See also Fortner Enterprises v. United States Steel Corp., 394 U.S. 495, 500, 89 S.Ct. 1252, 22 L. Ed.2d 495 (1969), also quoting Poller, supra.

■ Nor can summary judgment be granted as to the breach of contract or fraud claims. The rationale of NBC's motion as to the contract breach is based on the assumption that BMI claims the governing provisions of its contract with NBC were the same as those of the NBC–ASCAP agreement, and that if ASCAP had not been properly paid, ipso facto BMI had not. However, NBC contends that its contracts with ASCAP and BMI differed materially, so that as a matter of law no deduction can be drawn that because a payment was made to ASCAP a payment to BMI is also owing.

■ But NBC's argument misses the point. Whatever the differences between the NBC–ASCAP and NBC–BMI agreements, "time-on-the-air" is a key factor in the formula for computing the license fees in both cases, and to this extent there is merit to BMI's position. In any event, NBC has presented no evidence on this motion that under any construction of the NBC–BMI contract the sums paid by it to BMI have been properly computed. Of course, it may well be that they have been. But on a motion for summary judgment the factual issue must be foreclosed by adequate proof. Here—putting aside the question of what the NBC–BMI contract means, or how it compares with the NBC–ASCAP agreement—there is absolutely no showing that the fees which have been paid BMI are correct. Similarly, since discovery on the issues of fraudulent intent has not been completed, the Poller

---

5. NBC's argument that Judge Ryan had approved the payments and found them "reasonable" is not conclusive. The orders approving the payments were presented to Judge Ryan as consent orders. The amount of the fee to be paid ASCAP was never litigated, and neither NBC nor ASCAP presented substantial testimony or other evidence of the reasonableness of the NBC payment. Therefore, Judge Ryan had no occasion to inquire into the negotiations leading to the settlement or the motivations for the payments.

rule precludes the granting of summary judgment on the fraud claim.

Although summary judgment must therefore be denied, we nevertheless find merit to the alternative suggested by ABC that the antitrust count should be severed from the contract and fraud counts pursuant to Rule 42(b) and that discovery should proceed at this time only as to the antitrust count. Though we make no findings as to the merits of BMI's antitrust claim, it is possible that NBC and ABC will prevail at trial by demonstrating that no illegitimate motives were involved. Considering this possibility, we agree with ABC that it would be unfair at this point to permit BMI to gain access to ABC's and NBC's books and documents and thereby perhaps allow BMI to achieve a competitive advantage.

■ The antitrust claim should be tried separately and first, because if it fails there is a serious question whether the Court should retain jurisdiction of the pendent causes of action, and because trial of the antitrust claim will involve proof of different facts than trial of the contract and fraud counts. Putting it in the vernacular, the question raised by the antitrust claim is: "Why did the defendant do it?" The proof will relate to motive. The issues in the contract and fraud counts are: "What was the deal?" and "Did you say what I say you said and did you intend to trick me?" Necessarily, each question will prompt different lines of inquiry.

The motions for summary judgment are denied. The motion to sever the antitrust claim against all defendants is granted. Discovery as to the contract and fraud counts shall be stayed pending a decision on the antitrust claim. All discovery as to the antitrust cause of action shall proceed forthwith and continue on a reasonable basis until concluded.

It is so ordered.