Stanley **KUGLER**, Appellant,

v.

**AAMCO AUTOMATIC TRANSMIS-SIONS, INC.,** a Pennsylvania Corporation, Appellee.

No. 71–1639.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1972.

Decided May 16, 1972.

Daniel D. Plauda, Minneapolis, Minn., Van Valkenburg, Moss & Flaherty, Ltd., Paul Van Valkenburg, Lifson, Kelber, Abrahamson & Weinstein, Maher J. Weinstein, Minneapolis, Minn., for appellant.

John C. McNulty, Maslon, Kaplan, Edelman, Borman, Brand & McNulty, Roberta K. Levy, Minneapolis, Minn., for appellee.

Before VAN OOSTERHOUT, BRIGHT and STEPHENSON, Circuit Judges.

BRIGHT, Circuit Judge.

Stanley Kugler, a franchisee of AAMCO Automatic Transmissions, Inc., brought this antitrust action for treble damages against AAMCO, contending that under their franchise agreement, AAMCO compelled him to take and indirectly pay for advertising materials consisting of prepared tapes for radio, films for television, and mats for newspapers. Kugler contended that these items were tied to the franchise illegally under the proscription of § 1 of the Sherman Act (15 U.S.C. § 1). The district court entered a summary judgment of dismissal. The district court opinion is reported at 337 F.Supp. 872 (D.Minn. 1971). Kugler prosecutes this appeal.

The franchise agreement with AAMCO granted Kugler the right to operate a transmission repair shop under the AAMCO trade name, and recited that "[AAMCO] is willing to assist in the promotion of the above business by use of its methods of advertising, efficient

and proper routine, selection of key personnel, gross analysis and management procedures, and transmission repair and building procedures." In return for the initial franchise fees and an agreement for additional royalties at the rate of six percent of gross receipts, AAMCO made a number of concessions. AAMCO granted the franchisee a fifteen year franchise to advertise and use the name AAMCO in the operation of a transmission repair shop. AAMCO also agreed to train the franchisee in sales techniques, transmission rebuilding and repair procedures, and to make available other services necessary to the conduct of the franchisee's business. AAMCO further agreed to provide national advertising for the benefit of the franchisee.[1]

The franchise-contract terms obligated the franchisee, Kugler, to purchase all repair parts from AAMCO, except under certain limited circumstances, and to make weekly payments to a local advertising agency which placed the tapes, films, and mats here in question with appropriate communication media. Although the agreement did permit Kugler to obtain his own advertising materials from independent sources, such materials had to be approved by AAMCO before publication.

According to the theory advanced by Kugler, the essential product granted by the franchise consisted only of the right to use the name AAMCO in the transmission repair business operated by Kugler. Kugler contends that the advertising materials in question constituted separate products illegally tied to the right to use the AAMCO trade name.[2] According to Kugler, AAMCO forced him, through its superior economic power, to use those advertising materials. Such conduct was said to have caused Kugler damage through illegal restraint of competition. With respect to the claim for damages, Kugler alleged that the advertising materials contained false and misleading content; that the Attorney General of Minnesota brought an action in state court[3] against Kugler and AAMCO to enjoin this type of advertising; and that, as a result of adverse publicity generated by that lawsuit, Kugler sustained a loss of his entire business.

The district court disagreed with Kugler's contention and determined as a matter of law that the materials distributed by AAMCO for local advertising purposes did not constitute a product separable from the AAMCO franchise itself.[4] We agree with this view. The franchise in this case consists of more than the mere right to use the trade name AAMCO. For a stated consideration, AAMCO agreed to provide, in a single package, a means and method of operating and merchandising a transmission repair shop. National, as well as local, advertising services became an

---

1. The parties have indicated that well-known celebrities, such as Zsa Zsa Gabor, sports personality Leo Durocher, and others appeared in these film strips and radio tapes.

2. Among the cases cited by appellant, which proscribe tying arrangements under the Sherman Act, see Fortner Enterprises, Inc. v. United States Steel Corp., 394 U.S. 495, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969); Susser v. Carvel Corp., 332 F.2d 505 (2d Cir. 1964), cert. denied, 381 U.S. 125, 85 S.Ct. 1364, 14 L.Ed.2d 284 (1965); Siegel v. Chicken Delight, Inc., 311 F.Supp. 847 (N.D.Cal. 1970), cert. denied, 405 U.S. 955, 92

S.Ct. 1172, 31 L.Ed.2d 232 (Feb. 28, 1972); United States v. Jerrold Electronics Corp., 187 F.Supp. 545 (E.D.Pa. 1960), aff'd per curiam, 365 U.S. 567, 81 S.Ct. 755, 5 L.Ed.2d 806 (1961).

3. Kugler had filed a cross-claim against AAMCO in that state action, alleging damages by reason of AAMCO's fraudulent conduct and superior bargaining position. Kugler was unsuccessful at trial on this cross-claim and the parties advise that the case has been appealed to the Supreme Court of Minnesota.

4. Appellant concedes that "national advertising" is a part of a "single product," i. e. the AAMCO franchise.

integral and inseparable aspect of that package agreement.

Judge Larson made the following apt comments in summarily dismissing the case:

> Advertising was not tied to the purchase of the license; it was the essence of the license. If franchisors could not charge for national advertising, then one of the chief methods of distributing goods and services in this country would be effectively emasculated. Kugler paid for AAMCO's good name while he was a franchisee. He paid for the business he would receive as a result of the fact that AAMCO was known in all parts of the country. The way AAMCO became known, to a large extent, was due to extensive national advertising. Without the good name built up by large scale national promotion Kugler would have been "just another small businessman strugging [sic] to become known and accepted in the community." This is what he purchased, and he should not now be heard to complain that it was illegally tied to the license. For it was not tied, but rather inexorably bound as a part of the license itself. (footnote omitted). 337 F.Supp. at 876.

While we are mindful that summary judgment should be used sparingly in certain complex antitrust litigation, Norfolk Monument Co. v. Woodlawn Memorial Gardens, Inc., 394 U.S. 700, 704, 89 S.Ct. 1391, 22 L.Ed.2d 658 (1969); Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), we believe that the district court appropriately utilized that procedure here. *See, e. g.,* Cosentino v. Carver-Greenfield Corp., 433 F.2d 1274, 1277 (8th Cir. 1970); Hiland Dairy, Inc. v. Kroger Co., 402 F.2d 968, 973 (8th Cir. 1968), cert. denied, 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969).

We, therefore, affirm on the basis of Judge Larson's opinion and the authorities cited therein.