Thurman RAGAR and Marie A. Ferrara in behalf of themselves and all other owners of real property in the City of Pine Bluff, County of Jefferson, State of Arkansas, similarly situated, Plaintiffs,

v.

T. J. RANEY & SONS et al., Helen B. Raney et al., Executors of the Estate of Dallas P. Raney, Defendants.

No. LR-71-C-269.

United States District Court, E. D. Arkansas, W. D.

Feb. 12, 1975.

Pine Bluff and were to be sold to whomever would purchase them at the lowest interest rate. Accordingly, the bidding was conducted in terms of interest to be paid on the bonds by the City. The plaintiffs, owners of real property in the City of Pine Bluff, charge that the defendants agreed to "join hands" and submit a bid of 5.395% for the bonds on November 23, 1971, when, in fact, their actual fair market value was 4.50%. This agreement is alleged to violate Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and thus entitle plaintiffs to treble damages under Section 4 of the Clayton Act, 15 U.S.C. § 15. Plaintiffs claim to have been burdened with this debt for the next thirty years which will cause them to pay through their real estate taxes the difference between the actual interest being paid on the bonds (5.30%) and the fair market value of the bonds at the time of their original sale (4.50%).

Due to the filing of this lawsuit, the City of Pine Bluff could not obtain an unqualified approving opinion on the legality of the November 23, 1971 bond issue, and so the City readvertised and resold the bonds on February 3, 1972 at public auction bearing an interest rate of 5.30%. This sale eventually was approved and consummated. As a result, the plaintiffs filed a third amended complaint claiming that they have been damaged in the sum of $515,183.26, a figure determined by (1) subtracting the interest which would have been paid on the bonds over thirty years bearing their fair market value interest on November 23, 1971 (4.50%) from the interest rate actually being paid on the bonds sold February 3, 1972 over a thirty year period (5.30%); (2) plus the expenses of the City in holding a second sale; and (3) plus the increased cost of construction of the convention center due to the delay caused by cancellation of the first sale. Despite the filing of the amended complaint, defendants still persist in their claim that plaintiffs have suffered no damages and, in addition, do not have standing to sue. After consid-

Thurman Ragar, Jr., Pine Bluff, Ark., for plaintiffs.

E. M. Arnold, Little Rock, Ark., for T. J. Raney & Sons and Stephens, Inc.

George E. Campbell, Little Rock, Ark., for Powell and Satterfield, Inc. and W. H. Satterfield.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

This private antitrust action seeks treble damages for an alleged conspiracy by several local investment banking firms to fix the interest rate to be charged on municipal bonds sold at public auction by the City of Pine Bluff, Arkansas, on November 23, 1971. The bonds, in the principal amount of $3,000,000.00 to be paid in thirty years, were to be used to finance construction of a convention center for the City of

eration of the defendants' motion for summary judgment, the Court believes that the motion should be granted and the complaint, as thrice amended, dismissed with prejudice.

 Section 4 of the Clayton Act, 15 U.S.C. § 15, provides in pertinent part:

"[That] any person who shall be *injured in his business or property by reason of* anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." (Emphasis added.)

In order to have standing to sue under Section 4 of the Clayton Act, the plaintiff must show in addition to an antitrust violation: (1) a causal relationship between the antitrust violation and the alleged injury and (2) damage to his business or property. In construing the "by reason of" language of Section 4, the courts have held that mere proof of a remote causal relationship between an antitrust violation and plaintiff's injury is not enough to confer standing to sue on the plaintiff. Instead, the plaintiff must allege and prove that he has suffered a "direct injury" to his business or property as a result of the violation or that he was within the "target area" of the alleged antitrust conspiracy—*i.e.,* a person against whom the conspiracy was aimed. Nassau County Ass'n of Ins. Agts., Inc. v. Aetna Life & Cas. Co., 497 F.2d 1151, 1153 (2nd Cir. 1974); Reibert v. Atlantic Richfield Co., 471 F. 2d 727, 731 (10th Cir. 1973), cert. denied, 411 U.S. 938, 93 S.Ct. 1900, 36 L. Ed.2d 399; Calderone Enterprises Corp. v. United Artists Theatre Circuit, 454 F.2d 1292, 1295 (2nd Cir. 1971), cert. denied, 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132; Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 733 (3rd Cir. 1970), cert. denied, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971); Hoopes v. Union Oil Co. of California, 374 F.2d 480, 485 (9th Cir. 1967). Those who have suffered an "indirect, remote, or inconsequential" injury lack standing to sue.

The rationale behind this "direct injury target area" test is that while Congress intended to deter antitrust violations through private enforcement, it did not contemplate that every person who suffers some injury due to an antitrust violation be permitted to sue. *See,* Hawaii v. Standard Oil Co., 405 U.S. 251, 92 S. Ct. 885, 31 L.Ed.2d (1972).

"A line which limits standing to those against whom the antitrust violation is directed fulfills Congress' fundamental purpose and at the same time establishes a reasonable and easily identifiable cut-off that avoids the unfortunate consequences of opening the flood-gate to all, no matter how remote their interest or incidental their relationship." Calderone Enterprises Corp. v. United Artists Theatre Circuit, *supra,* 454 F.2d at 1296.

 Clearly, what constitutes a "direct injury" or "target area" cannot be defined with precision, but the courts have been able to define these terms by negative inference. For example, the following classes of persons do not have standing to sue under Clayton 4: (1) shareholders of an injured corporation, Kauffman v. Dreyfus Fund, Inc., *supra*; Martens v. Barrett, 245 F.2d 844 (5th Cir. 1957); (2) creditors of an injured corporation, Loeb v. Eastman Kodak Co., 183 F. 704, 709 (3rd Cir. 1910); (3) employees of an injured corporation, Reibert v. Atlantic Richfield Co., *supra*; (4) patentee for injury to licensee, Productive Inventions, Inc. v. Trico Products Corp., 224 F.2d 678 (2nd Cir. 1955), cert. denied, 350 U.S. 936, 76 S. Ct. 301, 100 L.Ed. 818 (1956); (5) a state for injury to its economy, Hawaii v. Standard Oil Co., *supra*.

 The individual plaintiffs here, owners of real estate in the City of Pine Bluff, purport to represent themselves and all other real estate owners in the City. They claim injury due to the burden of higher interest rates they will pay through their real estate taxes. Clearly, the position of these plaintiffs to the "injured municipality" is much more tenuous than that of the sharehold-

er to its "injured corporation," and the Court doubts that they have suffered a "direct injury" due to the alleged conspiracy to fix interest rates on the bonds or that they were the primary targets of the conspiracy. Hence, these taxpayer plaintiffs lack standing to sue under Clayton 4. Most significantly, the Eighth Circuit has held that a private citizen lacks standing to sue under Clayton 4 on behalf of a municipality for injuries suffered by that municipality due to alleged Sherman Act violations. Cosentino v. Carver-Greenfield Corp., 433 F.2d 1274 (8th Cir. 1970). While not employing either the "direct injury" or "target area" tests, the court analogized to a suit by a shareholder of an injured corporation:

> "The right to sue on private contracts ordinarily rests with the management of a private corporation. Similarly, the officers of a city possess broad discretion in conducting the municipality's day-to-day business. The responsibility of guarding the public against allegedly illegal acts rests with these officers, not the ordinary citizen." *Id.*, at 1277.

The same purpose is accomplished by denying plaintiffs standing in the present case.

■ Secondly, even if the plaintiffs could argue persuasively that they were "directly injured" or were the targets of the alleged conspiracy, they must also show that they have been injured in their "business or property" as that phrase is used in Section 4 of the Clayton Act. The Supreme Court of the United States has emphasized that in determining who may sue under the antitrust laws, the central inquiry is one of *competitive injury*. Perkins v. Standard Oil Co., 395 U.S. 642, 648–49, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969). Since the purpose of the antitrust laws is the "prevention of restraints to free competition in business and commercial transactions," Apex Hosiery Co. v. Leader, 310 U.S. 469, 493, 60 S.Ct. 982, 992, 84 L.Ed. 1311 (1940), it follows that only those persons injured in their competitive positions in a business in which they

are engaged should be permitted standing to sue under the Clayton Act. GAF Corp. v. Circle Floor Co., 463 F.2d 752, 758 (2nd Cir. 1972), cert. dismissed, 413 U.S. 901, 93 S.Ct. 3058, 37 L.Ed.2d 1045 (1973). Of course, these rules should not provide talismanic guides to decisions, but they do emphasize the need to examine whether the alleged antitrust violation has affected adversely the plaintiff's business activities or caused him competitive injury.

In the present case, plaintiff property owners have failed to allege any type of competitive injury to their businesses due to the activities of the defendants. Without such a showing, the plaintiffs' complaint must be dismissed.

> "The Supreme Court has consistently reiterated that '[t]he Sherman Act was . . . aimed at preserving free and unfettered *competition* as the rule of trade' (citation omitted) (emphasis added). The courts, in interpreting § 4 of the Clayton Act and its predecessor, have endeavored, although with some inconsistency and conflict, to promote the policy of competition established by the Sherman and Clayton Acts by interpreting § 4 as allowing treble damages only to those who have suffered some diminution of their ability to compete. Whether viewed in terms of 'lack of standing' or the absence of *antitrust* damages, the courts, in denying recovery to various kinds of plaintiffs, have sought to confine recovery to those who have been injured by restraints on competitive forces on the economy. . . . This Court has emphasized that, to recover, the plaintiff must allege and prove that the illegal restraint of trade injured his *competitive position* in the business in which he is or was engaged." GAF Corp. v. Circle Floor Co., *supra* at 757–59.

Accordingly, it is the opinion of this Court that the defendants' motion for summary judgment should be granted and the complaint as amended will be dismissed with prejudice. An appropriate order will be entered.