Jose GUTIERREZ et al., Plaintiffs,

v.

E. & J. GALLO WINERY CO., INC.,
et al., Defendants.

No. C–75–0001 SW.

United States District Court,
N. D. California,
San Francisco Division.

Jan. 11, 1977.

Barry Winograd, Salinas, Cal., Howard M. Downs, Petty, Andrews, Tufts & Jackson, San Francisco, Cal., for plaintiffs.

Norman C. Hile, James Haynes, Orrick, Herrington, Rowley & Sutcliffe, San Francisco, Cal., Robins, Davis & Lyons, Minneapolis, Minn., for defendants.

## OPINION

SPENCER WILLIAMS, District Judge.

This action is an antitrust action on behalf of two separate classes.[1] Plaintiffs allege, in three counts, that defendants and others maintained a contract, combination and conspiracy to restrain interstate trade and commerce in popularly priced wines in violation of section 1 of the Sherman Antitrust Act, 15 U.S.C. Sect. 1. Defendants engaged in a combination and conspiracy to monopolize interstate trade and commerce popularly priced wine in California and the United States, as alleged in count two. In count three, an attempt to monopolize and monopolization of the interstate trade or commerce in popularly priced wine in California and the United States. Plaintiffs seek both damages and injunctive relief, under sections 4 and 16 of the Clayton Act, 15 U.S.C. Sections 15 and 26.

Section 4 of the Clayton Act, 15 U.S.C. § 15, which would provide the consumer class with its damage remedy, reads:

Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

To maintain this action, plaintiffs must, under the language of section 4, have suffered an injury to their *business or property* interest. The parties in this action have briefed defendants' motion to dismiss for lack of standing, focusing on the issue of the nature of plaintiffs' business or property interest which has been allegedly injured.

Additionally, the farmworker class has pending a claim for injunctive relief under section 16 of the Clayton Act, 15 U.S.C. Section 26. Section 16 reads:

Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws . . . when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings.

Plaintiffs for the farmworker class, must allege an injury which flows from the violations charged, in the same sense that an injury in tort must be the proximate result of the wrong to permit liability. *See Jeffrey v. Southwestern Bell*, 518 F.2d 1129, 1132 (5th Cir. 1975); *Reibert v. Atlantic Richfield Co.*, 471 F.2d 727, 731 (10th Cir.), *cert. denied*, 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 399 (1973); *Conference of Studio Unions v. Loew's, Inc.*, 193 F.2d 51 (9th Cir. 1951), *cert. denied*, 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687 (1952).

## LEGISLATIVE HISTORY

The antitrust act which was passed in 1890 was meant to protect competition and to thwart the takeover of small businesses by the growing number of ruthless finan-

---

1. The class purportedly represented by Martin Fassler, Peter Truskier and Steven White includes "all persons who within the four years prior to the filing of this action purchased in the State of California any wine manufactured, sold, distributed or marketed by the defendants or any of them." Martin Fassler has since been permitted to withdraw as a named representative on his own motion.

   The class purportedly represented by Jose Gutierrez, Gustavo Flores and Manuel V. Perez includes "all persons who within the four years prior to the filing of this action have been employed as farmworkers by Gallo, engaged in the growing and harvesting of grapes or other agricultural produce for the production of wine." This farmworker class was denied standing at the first hearing in the Gallo action on standing, as to the class' claims for damages under section 4 of the Clayton Act. *See Contreras, et al., v. Grower Shipper Vegetable Assn. of Central California*, 1971 Trade Cas., para. 73,592 (N.D.Cal.1971), *aff'd. per curiam*, 484 F.2d 1346 (9th Cir. 1973), *cert. denied*, 415 U.S. 932, 94 S.Ct. 1445, 39 L.Ed.2d 490 (1974). The farmworker class' claims under Section 16 are discussed herein.

ciers who, at that time, were gaining control over the economy of the country. The Sherman Act of 1890 originally provided relief [2] for "any person . . . injured or damnified." *See* Cong.Rec. 1765 (1890). This language, changed in the version reported out of committee by the Judiciary Committee of the Senate, provided treble damages for injuries to a person's "business or property", and that version was enacted into law. *See* 21 Cong.Rec. 2901 (1890); Sherman Act of 1890, ch. 647, § 7, 26 Stat. 209. By adding the requirement that the injury must be to a person's *business or property* interest, Congress narrowed the field of those who could sue to recover for an injury caused by antitrust violations. In other words, a plaintiff must show more than a mere injury. As Senator Morgan stated,

> This bill ought not to be a breeder of lawsuits. If there is any one duty we have got higher than another in respect of the general judiciary of the United States, it is to suppress litigation and have justice done without litigation as far as we can . . . . [21 Cong.Rec. 3149 (1890).]

Only by drawing a line at a *business or property* interest could the proliferation of lawsuits feared by the Congress be prevented. And the meaning of that phrase is the sole issue presented in this motion to dismiss. If the plaintiffs were injured in their *business or property* they have standing to sue for treble damages. If not, they don't.[3]

A review of the Congressional Record permits some illumination on congressional intent, but much room for disagreement

persists. However, numerous references do indicate that in 1890 Congress was well aware of the fact that the new law would afford no remedy for the average consumer. *See* 21 Cong.Rec. 2569 (1890) (Sen. Sherman); *Id.* at 2610 (Sen. Morgan); *Id.* at 2615 (Sen. Coke); *Id.* at 3150 (Sen. George).

Senator Sherman, the author of the original bill, stated to the Senate that,

> In the case of a single individual whose bread has been advanced in price or whose small expenditures have been somewhat increased, there is no remedy for him. The remedy is only for those who are largely enough interested to sue . . . . [21 Cong.Rec. 2569 (1890).]

The Clayton Act additions, in 1914, strengthened the remedy for the small businessmen for whom litigation was difficult under the original act. Clayton provided not only the treble damage remedy of the Sherman Act, but permitted the person injured to seek injunctive relief and, as well, to introduce judgments obtained by the government as conclusive evidence of antitrust violations. *See* 51 Cong.Rec. 9270 (1914). In outlining the major portions of the Clayton Act to fellow members of the House of Representatives, Representative Webb of the House Judiciary Committee claimed that the purpose of the Clayton Act, specifically section 4 (then section 5), was to give

> any person who may be injured in his business, by reason of anything forbidden in the antitrust laws, the right to . . . recover threefold the damages sustained . . . . [51 Cong.Rec. 9073 (1914).]

---

**2.** There is much confusion in the legislative history as to when the language relating to treble damages was added. The Senators in office at the time were themselves confused. Senator George, in an attempt to set the record straight, discussed several versions of the bill, quoting from the record, to show his colleagues which versions and which subtle changes, were introduced at what stages. *See* 21 Cong.Rec. 2597–2600 (1890). The original bill (Sherman's, introduced August 14, 1888) provided for full recovery, as did the second (of September 11, 1888), the third (of January 25, 1889), and the fourth, a composite of the second and

third (introduced in December, 1889). The Finance Committee version, of January 14, 1890, provided for double recovery. The version reported out by the Judiciary Committee includes the treble damage provision. 21 Cong.Rec. 2901. The latter is the version approved by the Senate. 21 Cong.Rec. 3145 (1890).

**3.** There is no question that the plaintiffs are the targets of the alleged price fixing activities of the department store defendants. *See In re Western Liquid Asphalt Cases,* 487 F.2d 191, 198–99 (9th Cir. 1973), *cert. denied,* 415 U.S. 919, 94 S.Ct. 1419, 39 L.Ed.2d 474 (1974).

More specifically, Representative Carlin asserted,

> We went further in our effort to help the individual. We said, "When you have been damaged *in your business* by a combination operating in restraint of trade we are going to put you no longer to the expense of gathering the testimony and of combatting the wealth of the world in order to recover your damages. [51 Cong.Rec. 9270 (1914) (emphasis added).]

That the *business or property* language was meant to encompass injuries to businesses rather than to individuals is also evident from the preoccupation of members of congress with providing remedies for the injured businessman. For example, Representative Taggart told the House,

> A great many suits have been brought against trusts by the United States and many trusts have been dissolved. Some few have been punished, but the *people whose business they destroyed* have been practically without remedy. When this bill becomes a law, the person who willfully destroys another person's business will do so at his peril. . . .
>
> The bill is *framed for the purpose of liberating business* and not for the purpose of injuring or destroying any business. Its great purpose is to *protect small business from big business,* . . . [51 Cong.Rec. 9198 (1914) (emphasis added).]

And the Senate was equally preoccupied with the need to enlist the injured businessmen in the attack on antitrust violations. Senator Reed noted:

> It follows that the Argus eyes of thousands of business men now being injured will be upon the powerful concerns, and the thousand arms of the courts will be employed to prevent . . . evil practices. [51 Cong.Rec. 12939 (1914).]

## JUDICIAL CONSTRUCTION

The courts that have addressed the question directly have uniformly interpreted

congressional intent as requiring a commercial nexus. The ninth circuit has adopted a measured approach.

> [C]ourts have impressed a standing doctrine so as to confine the availability of section 4 relief only to those individuals whose protection is the fundamental purpose of the antitrust laws. *Cf. Barlow v. Collins,* 397 U.S. 159 [90 S.Ct. 832, 25 L.Ed.2d 192]. (1970); *Association of Data Processing v. Camp,* 397 U.S. 150 [90 S.Ct. 827, 25 L.Ed.2d 184]. (1970); *Mount Clemens Industries, Inc. v. Bell,* 464 F.2d 339, 341–344 (9th Cir. 1972). Unfortunately, no "bright line" has yet emerged to divine this group, and courts have formulated varied definitions. [*In re Multidistrict Vehicle Air Pollution,* 481 F.2d 122, 125 (9th Cir.), *cert. denied,* 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973), *reh. denied,* 414 U.S. 1148, 94 S.Ct. 905, 39 L.Ed.2d 104 (1974).]

The *Vehicle Air Pollution* court then criticized the lower court's expansive reading of section 4's coverage. The language of section 4, and the judicial constructions of standing thereunder had, the circuit asserted, keyed on the phrases *business or property* and *by reason of* as indicating twin requisites for standing.[4]

The first of these twin requisites for standing, the phrase *business or property,* is "a term definitively limited to interests in commercial ventures or enterprises." *Vehicle Air Pollution, supra,* 481 F.2d at 126. The state of California, suing for individual injury to itself, as a class representative and also in *parens patriae* was held to lack standing since none of its claims alleged any injury to commercial ventures or enterprises. *Id.* The contrasting claims of farmers whose crop yield was diminished because of the failure to develop adequate pollution control devices were sufficient to allege injury to a commercial interest. These farmers, however, were found to lack standing when the target area test was applied.

---

4. In this action, the phrase *business or property* is the only one which is in issue. Plaintiffs'

injury, whatever interest it is, is within the target area of defendants' activities.

The Supreme Court has agreed. In *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972), the state of Hawaii sued for an injury to itself as the purchaser of overpriced petroleum products 405 U.S. at 253, 92 S.Ct. 885, and also as both *parens patriae* for overcharges paid by citizens and as a class representative of all purchasers in Hawaii. The Supreme Court did not allow Hawaii to sue as *parens patriae*, since,

> A large and ultimately indeterminable part of the injury to the "general economy," as it is measured by economists, is no more than a reflection of injuries to the "business or property" of consumers, for which they may recover themselves under § 4. Even the most lengthy and expensive trial could not, in the final analysis, cope with the problems of double recovery inherent in allowing damages for harm both to the economic interests of individuals and for the quasi-sovereign interests of the State. 405 U.S. at 264, 92 S.Ct. at 892.

The Supreme Court permitted Hawaii to sue for the injury to itself, because it was injured in its proprietary interest. And,

> [l]ike the lower courts that have considered the meaning of the words "business or property," we conclude that they refer to commercial interests or enterprises. *See, e. g., Roseland v. Phister Mfg. Co.*, 125 F.2d 417 (CA7 1942); *Hamman v. United States*, 267 F.Supp. 420 (Mont.1967), appeal dismissed, 399 F.2d 673 (CA9 1968); *Broadcasters, Inc. v. Morristown Broadcasting Corp.*, 185 F.Supp. 641 (NJ 1960). 405 U.S. at 264, 92 S.Ct. at 892.

■ In view of the foregoing, it is apparent that consumers not claiming injury to any business or commercial interest lack standing to maintain an antitrust action for their injuries. The phrase *business or property* cannot be read to encompass injuries to pure business interests and also to pure property interests, in the disjunctive. The phrase is a conjunctive reference to interests of a business nature.

The eighth circuit has adopted the same interpretation of the standing requirement inherent in the *business or property* term. The district court in Arkansas' eastern district, affirmed strongly by the eighth circuit,[5] accurately interpreted the *business or property* phrase of section 4 of the Clayton Act:

> plaintiffs . . . must also show that they have been injured in their "business or property" as that phrase is used in Section 4 of the Clayton Act. The Supreme Court of the United States has emphasized that in determining who may sue under the antitrust laws, the central inquiry is one of *competitive injury*. *Perkins v. Standard Oil Co.*, 395 U.S. 642, 648–49 [89 S.Ct. 1871, 23 L.Ed.2d 599], (1969). Since the purpose of the antitrust laws is the "prevention of restraints to free competition in business and commercial transactions," *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 493 [60 S.Ct. 982, 84 L.Ed. 1311], (1940), it follows that only those persons injured in their competitive positions in a business in which they are engaged should be permitted standing to sue under the Clayton Act. *GAF Corp. v. Circle Floor Co.*, 463 F.2d 752, 758 (2nd Cir. 1972), cert. dismissed, 413 U.S. 901 [93 S.Ct. 3058, 37 L.Ed.2d 1045], (1973). [*Ragar v. T. J. Raney & Sons*, 388 F.Supp. 1184, 1187 (E.D.Ark.), *affirmed*, 521 F.2d 795 (8th Cir. 1975).]

■ The consumers in this action allege no injury to a business enterprise. They maintain, however, that an injury to their pocketbook is an injury to a sufficient commercial interest to satisfy the standing requirements in the ninth circuit. This court disagrees. A plaintiff must show an injury to a competitive interest in a business in which he or she is engaged to assert a cause

---

**5.** "Our evaluation of the record in light of the applicable case law, convinces us that the district court correctly ruled . . . . . Accordingly, we affirm on the basis of the district court's soundly reasoned opinion, reported at 388 F.Supp. 1184 (E.D.Ark.1975)." *Ragar v. T. J. Raney & Sons*, 521 F.2d 795, 796 (8th Cir.), *affirming* 388 F.Supp. 1184 (E.D.Ark.1975).

of action under the antitrust laws, specifically section 4 of the Clayton Act.[6]

## UNREDRESSED INJURY TO CONSUMERS

The adequacy of government remedies in these cases may be assailed. But the impotence of the individual consumer to recover under the existing antitrust laws should not prompt the courts to legislate a cause of action that does not exist in this circuit. That is for congress to do.

Largely because of the lack of protection afforded the small businesses and the individual consumers by the 1890 and 1914 antitrust acts, the Antitrust Improvements Act of 1976 added civil process amendments to the laws together with a requirement of premerger notification and a *parens patriae* cause of action for states whose citizen consumers are injured in the future. 45 U.S. L.W. 139 (October 19, 1976). The *parens patriae* portion of this Act was designed to strengthen the ability of state attorneys general to attack antitrust violations directed at individual consumers, the

> honest businessmen and hardworking consumers [who] are the real beneficiaries of this bill. (Congressional Record, S 15410, September 8, 1976, remarks of Sen. Kennedy.)

The protection of individual consumers, nickeled and dimed to death by price fixing violations of department stores and other retail sales entities, is left to the government. If businesses, even small businesses, as distinguished from individual consumers, are injured in the price fixing activities of antitrust law violators, then they have a remedy under the Clayton and Sherman Acts. The new amendments will provide consumers with a remedy to be asserted by their state attorneys general. But section 4 of the Clayton Act of 1914, amending the Sherman Act of 1890, did not, as Congress

understood those acts, arm the individual consumer with a cause of action.

Even the 1976 amendments to the antitrust laws may be inadequate leaving consumers largely unprotected since maintenance of an action rests in the sole discretion of the state attorneys general. And with today's interest in consumer rights, the result that this opinion portends might seem at once atrocious and inequitable. It *is* inequitable to permit the violators, generally large corporations, to retain their ill-gotten gains. And it seems anomalous to permit the small businessman purchasing an automobile at an unlawfully inflated price to recover merely because he purchased the automobile for his business, but yet deny recovery to an individual consumer who purchased the same model automobile at the same inflated price because the consumer intends only to use the car for personal transportation. The costume designer in a theatre will be permitted to recover when a women's clothing item is purchased for a commercial theatrical production at an illegally inflated price whereas the individual consumer, purchasing the item for use at a costume party will be unable to recover.

But as inequitable as these, or other easily imagined factual situations may be, the Courts should not broaden the operative scope of those laws. That is the exclusive province of Congress under the Constitution of the United States.

## SECTION 16 REMEDIES FOR THE CONSUMER PURCHASER OF WINE

■ The consumers in this action have also claimed a right to relief under section 16 of the Clayton Act, 15 U.S.C. Sec. 26, which provides for injunctive relief:

> Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States . . . against threatened

---

**6.** *Cf. Chattanooga Foundry and Pipe Works v. City of Atlanta*, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906). The city of Atlanta was injured in its pocketbook, but the decision does not support a position contrary to that taken here. The city was in the business of "con-

ducting a system of waterworks, and wishing to buy iron pipe, was led, by reason of the illegal arrangements between the members of the trust, to purchase the pipe . . . at a price much above what was reasonable . . . ." 203 U.S. at 395, 27 S.Ct. at 65.

loss or damage by a violation of the antitrust laws . . . when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings . . . .

The consumers in this action purchased Gallo wine at prices which they contend would have been a few cents lower had the anticompetitive practices not driven prices upward. The average individual recovery, were these plaintiffs to sue for damages successfully, would be miniscule. The essential, equitable element of irreparable injury from future violations is missing, and injunctive relief will not lie.

### FARMWORKER PLAINTIFFS' STANDING UNDER SECTION 16

As indicated at the outset of this memorandum order, the farmworker plaintiffs have a claim pending for relief in the form of an injunction. The class' claims for treble damages under section 4 were dismissed at the hearing held on February 2, 1976. (See this court's order of June 29, 1976.)

Section 16 deletes any requirement that a plaintiff be injured in his *business or property* in order to state a cause of action for antitrust violations. However, the plaintiff must show, among other things, "threatened loss or damage *by* a violation of the antitrust laws." 15 U.S.C. § 26 (emphasis added). This language requires a showing that the alleged significant threat of injury was *proximately caused* by the violations. *See, e. g., Reibert v. Atlantic Richfield Co.,* 471 F.2d 727 (10th Cir.), *cert. denied,* 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 399 (1973). Those courts which have found causation lacking for injunctive relief have often spoken in terms of the remoteness of the injury from the allegedly violative activity. *See, e. g., Jeffrey v. Southwestern Bell,* 518 F.2d 1129 (5th Cir. 1975); *Conference of Studio Unions v. Loew's, Inc.,* 193 F.2d 51 (9th Cir. 1951), *cert. denied,* 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687 (1952).

The farmworkers in this case, as this court has stated, were "not within the area of the economy endangered by the alleged concentration" attempted by defendants. Even if we were to assume that loss of employment opportunities constitutes both substantial and irreparable injury, the injury here is too remote to permit injunctive relief under section 16.

### CONCLUSION

The consumer plaintiffs in this action cannot recover treble damages under section 4 of the Clayton Act because they have failed to allege an injury to a commercial enterprise or business in which they are engaged. The consumer plaintiffs are not entitled to injunctive relief because they have not been irreparably injured. The farmworker plaintiffs are too remote to seek injunctive relief. Therefore,

IT IS HEREBY ORDERED that this matter, in its entirety, be and is dismissed for failure of the plaintiffs to allege sufficient standing to sue.