Donna Jean WEINBERG et
al., Plaintiffs,

v.

FEDERATED DEPARTMENT STORES,
INC., et al., Defendants.

Eleanor EISENBERG et al., Plaintiffs,

v.

FEDERATED DEPARTMENT STORES,
INC., et al., Defendants.

Marilyn MOITIE, Plaintiff,

v.

FEDERATED DEPARTMENT STORES,
INC., et al., Defendants.

Sandra G. MUSSER, Plaintiff,

v.

FEDERATED DEPARTMENT STORES,
INC., et al., Defendants.

June MORGAN, Plaintiff,

v.

FEDERATED DEPARTMENT STORES,
INC., et al., Defendants.

Nos. C–76–867SW, C–76–869SW,
C–76–1110SW, C–76–1363SW
and C–76–1429SW.

United States District Court,
N. D. California.

Jan. 11, 1977.

John W. Keker, Kipperman, Shawn & Keker, San Francisco, Cal., Baltaxe, Rutkin, Kaplan & Klein, Beverly Hills, Cal., Jerrold N. Offstein, Frederick P. Furth, Gary J. Near, Harvey Freed, San Francisco, Cal., for plaintiffs.

Steinhart, Goldberg, Feigenbaum & Ladar, San Francisco, Cal., Solinger & Gordon, New York City, McKenna & Fitting, Morrison & Foerster, San Francisco, Cal., Covington & Burling, Washington, D.C., for defendants.

## MEMORANDUM ORDER

SPENCER WILLIAMS, District Judge.

The defendants in these actions are Federated Department Stores, Inc., d/b/a I. Magnin & Co., and Saks & Company, d/b/a Saks Fifth Avenue. They are engaged in the business of selling merchandise, including women's clothing, to the general public at retail prices through retail stores located in Northern California and elsewhere. The plaintiffs in all of these cases are individual members of the general public who allege that they purchased women's clothing at retail from one or both of the defendants. The plaintiffs allege representation of overlapping classes of retail purchasers.[1] These actions parallel an indictment and civil complaint filed in this court by the United States on April 28, 1976. (*See United States v. Federated Department Stores, Inc., et al.*, Civil Number C–76–858–RHS, and CR–76–236–SAW.) The government antitrust action charged that I. Magnin and Saks had agreed to fix the retail prices of women's clothing sold by them to the general public in Northern California during the period from early 1963 until April 1974. The civil complaints in this action allege that the plaintiffs were the victims of prices artificially maintained at high levels in violation of the antitrust laws of the United States.

Section 4 of the Clayton Act, 15 U.S.C. § 15, which would provide plaintiffs with their remedy in damages, reads:

Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an

---

1. The alleged classes are defined in the various complaints as follows:

*Weinberg*—All persons who purchased women's clothing at retail prices from defendants in Northern California during the period from as early as 1963 until at least April, 1974;

*Eisenberg*—All individuals, corporations or other entities who have made retail purchases of women's clothing from one or both of the defendants in Northern California at any time from 1963 to the filing of the complaint;

*Moitie*—All persons residing in Santa Clara and San Mateo counties who, from 1963 to the present, made retail purchases of women's clothing (i) from I. Magnin on a charge basis, (ii) from I. Magnin on a check or cash basis, (iii) from Bullock's Northern California (a separate Federated division from I. Magnin) on a charge basis, (iv) from Bullock's Northern California on a check or cash basis, (v) from Saks on a charge basis, and (vi) from Saks on a check or cash basis;

*Musser*—All persons in Northern California who purchased women's clothing, on charge accounts, from one or both defendants from as early as 1963 until at least April, 1974;

*Morgan*—All charge customers who bought women's clothing with an aggregate sales value of $250 or more since January 1963 from, and whose names appeared as of March 31, 1974 on the charge account list kept by (i) I. Magnin, (ii) Bullock's Northern California and (iii) Saks.

agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

To maintain this action, plaintiffs must, under the language of section 4, have suffered an injury to their *business or property* interest. The parties in this action have briefed defendants' motion to dismiss for lack of standing, focusing on the issue of the nature of plaintiffs' *business or property* interest which has been allegedly injured.

## LEGISLATIVE HISTORY

The antitrust act which was passed in 1890 was meant to protect competition and to thwart the takeover of small businesses by the growing number of ruthless financiers who, at that time, were gaining control over the economy of the country. The Sherman Act of 1890 originally provided relief[2] for "any person . . . injured or damnified." *See* Cong.Rec. 1765 (1890). This language, changed in the version reported out of committee by the Judiciary Committee of the Senate, provided treble damages for injuries to a person's "business or property", and that version was enacted into law. *See* 21 Cong.Rec. 2901 (1890); Sherman Act of 1890, ch. 647, § 7, 26 Stat. 209. By adding the requirement that the injury must be to a person's *business or property* interest, Congress narrowed the field of those who could sue to recover for an injury caused by antitrust.violations. In other words, a plaintiff must show more

than a mere injury. As Senator Morgan stated,

> This bill ought not to be a breeder of lawsuits. If there is any one duty we have got higher than another in respect of the general judiciary of the United States, it is to suppress litigation and have justice done without litigation as far as we can . . .. [21 Cong.Rec. 3149 (1890).]

Only by drawing a line at a *business or property* interest could the proliferation of lawsuits feared by the Congress be prevented. And the meaning of that phrase is the sole issue presented in this motion to dismiss. If the plaintiffs were injured in their *business or property* they have standing to sue for treble damages. If not, they don't.[3]

A review of the Congressional Record permits some illumination on congressional intent, but much room for disagreement persists. However, numerous references do indicate that in 1890 Congress was well aware of the fact that the new law would afford no remedy for the average consumer. *See* 21 Cong.Rec. 2569 (1890) (Sen. Sherman); *Id.* at 2610 (Sen. Morgan); *Id.* at 2615 (Sen. Coke); *Id.* at 3150 (Sen. George).

Senator Sherman, the author of the original bill, stated to the Senate that,

> In the case of a single individual whose bread has been advanced in price or whose small expenditures have been somewhat increased, there is no remedy for him. The remedy is only for those who are largely enough interested to sue . . .. [21 Cong.Rec. 2569 (1890).]

**2.** There is much confusion in the legislative history as to when the language relating to treble damages was added. The Senators in office at the time were themselves confused. Senator George, in an attempt to set the record straight, discussed several versions of the bill, quoting from the record, to show his colleagues which versions and which subtle changes were introduced at what stages. *See* 21 Cong.Rec. 2597–2600 (1890). The original bill (Sherman's, introduced August 14, 1888) provided for full recovery, as did the second (of September 11, 1888), the third (of January 25, 1889), and the fourth, a composite of the second and

third (introduced in December, 1889). The Finance Committee version, of January 14, 1890, provided for double recovery. The version reported out by the Judiciary Committee includes the treble damage provision. 21 Cong.Rec. 2901. The latter is the version approved by the Senate. 21 Cong.Rec. 3145 (1890).

**3.** There is no question that the plaintiffs are the targets of the alleged price fixing activities of the department store defendants. *See In re Western Liquid Asphalt Cases*, 487 F.2d 191, 198–99 (9th Cir. 1973), *cert. denied*, 415 U.S. 919, 94 S.Ct. 1419, 39 L.Ed.2d 474 (1974).

The Clayton Act additions, in 1914, strengthened the remedy for the small businessmen for whom litigation was difficult under the original act. Clayton provided not only the treble damage remedy of the Sherman Act, but permitted the person injured to seek injunctive relief and, as well, to introduce judgments obtained by the government as conclusive evidence of antitrust violations. *See* 51 Cong.Rec. 9270 (1914). In outlining the major portions of the Clayton Act to fellow members of the House of Representatives, Representative Webb of the House Judiciary Committee claimed that the purpose of the Clayton Act, specifically section 4 (then section 5), was to give

> any person who may be injured in his business, by reason of anything forbidden in the antitrust laws, the right to . . recover threefold the damages sustained . . .. [51 Cong.Rec. 9073 (1914).]

More specifically, Representative Carlin asserted,

> We went further in our effort to help the individual. We said, "When you have been damaged *in your business* by a combination operating in restraint of trade we are going to put you no longer to the expense of gathering the testimony and of combatting the wealth of the world in order to recover your damages. [51 Cong.Rec. 9270 (1914) (emphasis added).]

That the *business or property* language was meant to encompass injuries to businesses rather than to individuals is also evident from the preoccupation of members of congress with providing remedies for the injured businessman. For example, Representative Taggart told the House,

> A great many suits have been brought against trusts by the United States and many trusts have been dissolved. Some few have been punished, but the *people whose business they destroyed* have been practically without remedy. When this bill becomes a law, the person who willfully destroys another person's business will do so at his peril. . . .

The bill is *framed for the purpose of liberating business* and not for the purpose of injuring or destroying any business. Its great purpose is to *protect small business from big business,* . .. [51 Cong.Rec. 9198 (1914) (emphasis added).]

And the Senate was equally preoccupied with the need to enlist the injured businessmen in the attack on antitrust violations. Senator Reed noted:

> It follows that the Argus eyes of thousands of business men now being injured will be upon the powerful concerns, and the thousand arms of the courts will be employed to prevent . . . evil practices. [51 Cong.Rec. 12939 (1914).]

## JUDICIAL CONSTRUCTION

The courts that have addressed the question directly have uniformly interpreted congressional intent as requiring a commercial nexus. The ninth circuit has adopted a measured approach.

> [C]ourts have impressed a standing doctrine so as to confine the availability of section 4 relief only to those individuals whose protection is the fundamental purpose of the antitrust laws. *Cf. Barlow v. Collins,* 397 U.S. 159 [90 S.Ct. 832, 25 L.Ed.2d 192] (1970); *Association of Data Processing v. Camp,* 397 U.S. 150 [90 S.Ct. 827, 25 L.Ed.2d 184] (1970); *Mount Clemens Industries, Inc. v. Bell,* 464 F.2d 339, 341–344 (9th Cir. 1972). Unfortunately, no "bright line" has yet emerged to divine this group, and courts have formulated varied definitions. [*In re Multidistrict Vehicle Air Pollution,* 481 F.2d 122, 125 (9th Cir.), *cert. denied,* 414 U.S. 1045, [94 S.Ct. 551, 38 L.Ed.2d 336] (1973), *reh. denied,* 414 U.S. 1148, 94 S.Ct. 905, 39 L.Ed.2d 104 (1974).]

*The Vehicle Air Pollution* court then criticized the lower court's expansive reading of section 4's coverage. The language of section 4, and the judicial constructions of standing thereunder had, the circuit asserted, keyed on the phrases *business or proper-*

ty and *by reason of* as indicating twin requisites for standing.[4]

The first of these twin requisites for standing, the phrase *business or property*, is "a term definitively limited to interests in commercial ventures or enterprises". *Vehicle Air Pollution, supra*, 481 F.2d at 126. The state of California, suing for individual injury to itself, as a class representative and also in *parens patriae* was held to lack standing since none of its claims alleged any injury to commercial ventures or enterprises. *Id.* The contrasting claims of farmers whose crop yield was diminished because of the failure to develop adequate pollution control devices were sufficient to allege injury to a commercial interest. These farmers, however, were found to lack standing when the target area test was applied.

The Supreme Court has agreed. In *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972), the state of Hawaii sued for an injury to itself as the purchaser of overpriced petroleum products (405 U.S. at 253, 92 S.Ct. 885), and also as both parens patriae for overcharges paid by citizens and as a class representative of all purchasers in Hawaii. The Supreme Court did not allow Hawaii to sue as *parens patriae*, since,

> A large and ultimately indeterminable part of the injury to the "general economy," as it is measured by economists, is no more than a reflection of injuries to the "business or property" of consumers, for which they may recover themselves under § 4. Even the most lengthy and expensive trial could not, in the final analysis, cope with the problems of double recovery inherent in allowing damages for harm both to the economic interests of individuals and for the quasi-sovereign interests of the State. (405 U.S. at 264, 92 S.Ct. at 892.)

The Supreme Court permitted Hawaii to sue for the injury to itself, because it was injured in its proprietary interest. And,

> [l]ike the lower courts that have considered the meaning of the words "business or property," we conclude that they refer to commercial interests or enterprises. *See, e. g., Roseland v. Phister Mfg. Co.*, 125 F.2d 417 (CA7 1942); *Hamman v. United States*, 267 F.Supp. 420 (Mont.1967), appeal dismissed, 399 F.2d 673 (CA9 1968); *Broadcasters, Inc. v. Morristown Broadcasting Corp.*, 185 F.Supp. 641 (NJ 1960). (405 U.S. at 264, 92 S.Ct. at 892.)

◾ In view of the foregoing, it is apparent that consumers not claiming injury to any business or commercial interest lack standing to maintain an antitrust action for their injuries. The phrase *business or property* cannot be read to encompass injuries to pure business interests and also to pure property interests, in the disjunctive. The phrase is a conjunctive reference to interests of a business nature.

The eighth circuit has adopted the same interpretation of the standing requirement inherent in the *business or property* term. The district court in Arkansas' eastern district, affirmed strongly by the eighth circuit,[5] accurately interpreted the *business or property* phrase of section 4 of the Clayton Act:

> plaintiffs . . . must also show that they have been injured in their "business or property" as that phrase is used in Section 4 of the Clayton Act. The Supreme Court of the United States has emphasized that in determining who may sue under the antitrust laws, the central inquiry is one of *competitive injury*. *Perkins v. Standard Oil Co.*, 395 U.S. 642, 648–49, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969). Since the purpose of the antitrust laws is the "prevention of restraints to

---

**4.** In this action, the phrase *business or property* is the only one which is in issue. Plaintiffs' injury, whatever interest it is, is within the target area of defendants' activities.

**5.** "Our evaluation of the record in light of the applicable case law, convinces us that the dis-

trict court correctly ruled . . . . Accordingly, we affirm on the basis of the district court's soundly reasoned opinion, reported at 388 F.Supp. 1184 (E.D.Ark.1975)." *Ragar v. T. J. Raney & Sons*, 521 F.2d 795, 796 (8th Cir.), *affirming* 388 F.Supp. 1184 (E.D.Ark.1975).

free competition in business and commercial transactions," *Apex Hosiery Co. v. Leader*, 310 U.S. 469, 493, 60 S.Ct. 982, 992, 84 L.Ed. 1311 (1940), it follows that only those persons injured in their competitive positions in a business in which they are engaged should be permitted standing to sue under the Clayton Act. *GAF Corp. v. Circle Floor Co.*, 463 F.2d 752, 758 (2nd Cir. 1972), cert. dismissed, 413 U.S. 901, 93 S.Ct. 3058, 37 L.Ed.2d 1045 (1973). [*Ragar v. T. J. Raney & Sons*, 388 F.Supp. 1184, 1187 (E.D.Ark.), *affirmed*, 521 F.2d 795 (8th Cir. 1975).]

■ The consumers in this action allege no injury to a business enterprise. They maintain, however, that an injury to their pocketbook is an injury to a sufficient commercial interest to satisfy the standing requirements in the ninth circuit. This court disagrees. A plaintiff must show an injury to a competitive interest in a business in which he or she is engaged to assert a cause of action under the antitrust laws, specifically section 4 of the Clayton Act.[6]

## UNREDRESSED INJURY TO CONSUMERS

The adequacy of government remedies in these cases may be assailed. But the impotence of the individual consumer to recover under the existing antitrust laws should not prompt the courts to legislate a cause of action that does not exist in this circuit. That is for congress to do.

Largely because of the lack of protection afforded the small businesses and the individual consumers by the 1890 and 1914 antitrust acts, the Antitrust Improvements Act of 1976 added civil process amendments to the laws together with a requirement of premerger notification and a *parens patriae* cause of action for states whose citizen consumers are injured in the future. 45 U.S. L.W. 139 (October 19, 1976). The *parens patriae* portion of this Act was designed to strengthen the ability of state attorneys general to attack antitrust violations directed at individual consumers, the

> honest businessmen and hardworking consumers [who] are the real beneficiaries of this bill. (Congressional Record, S 15410, September 8, 1976, remarks of Sen. Kennedy.)

The protection of individual consumers, nickeled and dimed to death by price fixing violations of department stores and other retail sales entities, is left to the government. If businesses, even small businesses, as distinguished from individual consumers, are injured in the price fixing activities of antitrust law violators, then they have a remedy under the Clayton and Sherman Acts. The new amendments will provide consumers with a remedy to be asserted by their state attorneys general. But section 4 of the Clayton Act of 1914, amending the Sherman Act of 1890, did not, as Congress understood those acts, arm the individual consumer with a cause of action.

Even the 1976 amendments to the antitrust laws may be inadequate leaving consumers largely unprotected since maintenance of an action rests in the sole discretion of the state attorneys general. And with today's interest in consumer rights, the result that this opinion portends might seem at once atrocious and inequitable. It *is* inequitable to permit the violators, generally large corporations, to retain their ill-gotten gains. And it seems anomalous to permit the small businessman purchasing an automobile at an unlawfully inflated price to recover merely because he purchased the automobile for his business, but yet deny recovery to an individual consumer who purchased the same model automobile at the same inflated price because the consumer intends only to use the car for personal transportation. The costume designer in a theatre will be permitted to

---

**6.** *Cf. Chattanooga Foundry and Pipe Works v. City of Atlanta*, 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906) (The city of Atlanta was injured in its pocketbook, but the decision does not support a position contrary to that taken here. The city was in the business of "conducting a system of waterworks, and wishing to buy iron water pipe, was led, by reason of the illegal arrangements between the members of the trust, to purchase the pipe . . . at a price much above what was reasonable . . . ." 203 U.S. at 395, 27 S.Ct. at 66.

recover when a women's clothing item is purchased for a commercial theatrical production at an illegally inflated price whereas the individual consumer, purchasing the item for use at a costume party will be unable to recover.

■ But as inequitable as these, or other easily imagined factual situations may be, the Courts should not broaden the operative scope of those laws. That is the exclusive province of Congress under the Constitution of the United States.

## SECTION 16 REMEDIES FOR CONSUMERS

■ The consumers in this action have also claimed a right to relief under section 16 of the Clayton Act, 15 U.S.C. Sec. 26, which provides for injunctive relief:

> Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States . . . against threatened loss or damage by a violation of the antitrust laws . . . when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings . . . .

The government action in this case, for criminal and civil injunctive action against the defendants, provides an adequate protection against future harm from these defendants. The plaintiffs are not, under the circumstances here, faced with irreparable future injury which would entitle them to injunctive relief under section 16.

## CONCLUSION

The plaintiffs in these related cases cannot recover treble damages under section 4 of the Clayton Act because they have failed to allege an injury to a sufficient commercial enterprise or business in which they are engaged. Neither are they entitled to injunctive relief under section 16 since they are not irreparably injured. Therefore,

IT IS HEREBY ORDERED that this matter, in its entirety, be and is dismissed for failure of the plaintiffs to allege sufficient standing to sue.